# EXHIBIT B

Andrea Lynn Chasteen
Will County Circuit Clerk
Twelfth Judicial Circuit Court
Electronically Filed
2025MR000408
Filed Date: 8/7/2025 5:23 PM
Envelope: 33925989
Clerk: GA

## IN THE CIRCUIT COURT OF THE TWELFTH JUDICIAL CIRCUIT
## WILL COUNTY, ILLINOIS

| | | |
|---|---|---|
| ERIC DIAZ, MARK SULLIVAN, and CRAIG HATFIELD, individually and on behalf of similarly situated individuals, | ) ) ) ) ) | |
| *Plaintiffs,* | ) ) | No. **2025MR000408** |
| v. | ) ) | Hon. |
| TEA DATING ADVICE, INC, a Delaware corporation, | ) ) ) | |
| *Defendant.* | ) ) ) | |

## CLASS ACTION COMPLAINT

Plaintiffs Eric Diaz, Mark Sullivan, Craig Hatfield (collectively "Plaintiffs"), individually and on behalf of other similarly situated individuals, bring this Class Action Complaint against Defendant Tea Dating Advice, Inc. ("Defendant" or "Tea") for its violations of the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.* ("BIPA"), and the Illinois Right of Publicity Act, 765 ILCS 1075/1 *et seq.* ("IRPA"), and to obtain redress for all persons injured by Defendant's conduct. Plaintiffs allege as follows based on personal knowledge as to their own acts and experiences, and as to all other matters, upon information and belief, including an investigation conducted by their attorneys.

## INTRODUCTION

1.     Plaintiffs seek to represent a class of individuals who had their unique facial biometrics unlawfully collected, retained and used without their consent or authorization by Defendant when they were posted on Defendant's mobile application (the "Tea App.") without their consent or permission.

**Initial case management set for**
**__11/25/2025__     at:__9:00__  a.m.          room 902**

2.      Plaintiffs also seek to represent a class of individuals whose images were posted on Defendant's Tea App. without consent and had their name, images, and personally identifying information used to advertise Defendant's paid services.

3.      On behalf of themselves and the proposed Class defined below, Plaintiffs seek an injunction requiring Defendant to comply with BIPA and IRPA, as well as an award of statutory damages to the Class, together with costs and reasonable attorneys' fees.

## PARTIES

4.      At all relevant times, Plaintiff Eric Diaz has been a citizen of Illinois and a resident of Will County

5.      At all relevant times, Plaintiff Mark Sullivan has been a citizen of Illinois and resident of Peoria County.

6.      At all relevant times, Plaintiff Craig Hatfield has been a citizen of Illinois and resident of Cook County.

7.      Defendant Tea Dating Advice, Inc. is a Delaware corporation that conducts business throughout Illinois, including in Cook County, Illinois.

## JURISDICTION AND VENUE

8.      This Court may assert personal jurisdiction over Defendant pursuant to 735 ILCS 5/2-209 in accordance with the Illinois Constitution and the Constitution of the United States, because Defendant conducts business within this state and because Plaintiffs' claims arise out of Defendant's unlawful in-state actions.

9.      Venue is proper in Will County, Illinois pursuant to 735 ILCS 5/2-101, because Defendant conducts business in Will County, Illinois, and thus resides there under § 2-102.

2

**THE BIOMETRIC INFORMATION PRIVACY ACT**

10.    "Biometrics" refers to a "biology-based set[s] of measurements." *Rivera v. Google Inc.*, 238 F. Supp. 3d 1088, 1094 (N.D. Ill. 2017). Specifically, "biometrics" are "a set of measurements of a specified physical component (eye, finger, voice, hand, face)." *Id.* at 1296.

11.    BIPA was enacted in 2008 in order to safeguard individuals' biometrics as the result of the "very serious need [for] protections for the citizens of Illinois when it [comes to their] biometric information." Illinois House Transcript, 2008 Reg. Sess. No. 276. BIPA is codified as Act 14 in Chapter 740 of the Illinois Compiled Statutes.

12.    As set forth in BIPA, biologically unique identifiers, such as a person's unique facial geometry, cannot be changed. 740 ILCS 14/5(c). The inalterable nature of biologically unique identifiers presents a heightened risk when an individual's biometrics are not protected in a secure and transparent fashion. 740 ILCS 14/5(d)–(g).

13.    As a result of the need for enhanced protection of biometrics, BIPA imposes various requirements on private entities that collect or maintain individuals' biometrics, including facial scans.

14.    Among other things, BIPA seeks to regulate "the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information." 740 ILCS 14/5(g). BIPA thus applies to entities that interact with two forms of biometric data: biometric "identifiers" and biometric "information." 740 ILCS 14/15(a)-(e).

15.    BIPA defines a "biometric identifier" as any personal feature that is unique to an individual, including fingerprints, voiceprints, palm scans and facial geometry. "Biometric identifiers" are physiological, as opposed to behavioral, characteristics. BIPA's text provides a non-exclusive list of protected "biometric identifiers," including "a retina or iris scan,

3

fingerprint, voiceprint, or scan of hand or face geometry." 740 ILCS 14/10.

16. "Biometric information" is defined by BIPA as "any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual." *Id*. This definition helps ensure that information based on a biometric identifier that can be used to identify a person is covered by BIPA. Collectively, biometric identifiers and biometric information are known as "biometrics."

17. In BIPA, the Illinois General Assembly identified five distinct activities that may subject private entities to liability:

    a.    possessing biometrics without a proper policy publicly available, 740 ILCS 14/15(a);

    b.    collecting, capturing, purchasing, receiving, or obtaining biometrics, 740 ILCS 14/15(b);

    c.    selling, leasing, trading, or profiting from biometrics, 740 ILCS 14/15(c);

    d.    disclosing or disseminating biometrics, 740 ILCS 14/15(d); and

    e.    failing to secure biometric data using a reasonable standard of care, 740 ILCS 14/15(e).

18. As the Illinois Supreme Court has held, BIPA "codified that individuals possess a right to privacy in and control over their biometric identifiers and biometric information." *Rosenbach v. Six Flags Entm't Corp.*, 2019 IL 123186, ¶ 33, 129 N.E.3d 1197, 1206 (Ill. 2019). The Illinois Supreme Court further held that when a private entity fails to comply with BIPA "that violation constitutes an invasion, impairment, or denial of the statutory rights of any person or customer whose biometric identifier or biometric information is subject to the breach." *Id*.

## THE ILLINOIS RIGHT OF PUBLICITY ACT

19. Recognizing the right of an individual to control the use of their identity for a

4

commercial purpose, in 1999 the Illinois legislature passed the Illinois Right of Publicity Act. 765 ILCS 1075/10.

20.     IRPA defines identity as any attribute that identifies an individual to an ordinary and reasonable viewer. 765 ILCS 1075/5. This includes the individual's "name, signature, photograph, image, likeness, or voice." 765 ILCS 1075/5.

21.     IRPA defines a commercial purpose as: "the public use or holding out of an individual's identity on or in connection with the offering for sale or sale of a product, merchandise, goods, or services; for purposes of advertising or promoting products, merchandise, goods, or services; or for the purpose of fundraising. 765 ILCS 1075/5.

22.     IRPA forbids the use of a person's identity during their lifetime without "previous written consent." 765 ILCS 1075/30.

23.     IRPA provides a private right of action and statutory damages of the greater of $1,000 or actual damages for violations and punitive damages for willful violations. 765 ILCS 1075/20; 765 ILCS 1075/40.

24.     A person's identity made available as part of a free version or preview which is offered in connection with and serves as an advertisement for a paid service constitutes use of a person's identity for a commercial purpose under IRPA. *Lukis v. Whitepages Inc.*, 454 F. Supp. 3d 746, 760 (N.D. Ill. 2020).

## FACTUAL BACKGROUND

### A.     Defendant's BIPA Violations.

25.     Defendant is the owner and operator of the viral dating phone application, the Tea App. Defendant's Tea App. subscribers are comprised of women who are encouraged to post information and feedback about men they have dated, including posting photos of them.

26.     As part of its services, Defendant advertises its ability to use reverse image search technology to compare the photos of men provided by users through the Tea Apps with other photos previously found on the Tea App. or on the internet.[1] Such reverse image searching is accomplished by collecting and analyzing the facial geometry of men whose photos are provided by users through the Tea App. and biometrically comparing them with other photos provided by other users of the Tea App. and on the internet. Thus, each time a photo of man is posted by a user on the Tea App., Defendant collects, stores, possesses and analyzes the facial geometry of the person featured in the photo without their consent.

27.     Defendant claims to have 5.7 million registered users on its Tea App. including many of whom reside within the State of Illinois.[2] Therefore, thousands, if not tens of thousands, of men within the State of Illinois had their photos posted on the Tea App. by its users and thus had their biometrics collected and captured by Defendant without their consent.

28.     In or about July of 2025, Plaintiff Eric Diaz had his photo posted on the Tea App. and his facial geometry collected, analyzed, and biometrically compared to other photos without his consent.

29.     In or about July of 2025, Plaintiff Mark Sullivan had his photo posted on the Tea App. and his facial geometry collected, analyzed, and biometrically compared to other photos without his consent.

30.     In or about July of 2025, Plaintiff Craig Hatfield had his photo posted on the Tea App. and his facial geometry collected, analyzed, and biometrically compared to other photos without his consent.

31.     However, even though Defendant collected, captured, analyzed and stored

---

[1] https://www.teaforwomen.com/ (last accessed July 31, 2025).
[2] https://www.teaforwomen.com/about (last accessed July 31, 2025).

6

Plaintiffs' and Class members' facial biometrics, Defendant failed to obtain proper written consent as required by BIPA to collect such biometrics.

32.     In addition, at the time Defendant collected and came into possession of Plaintiffs' facial biometrics, Defendant failed to make publicly available any BIPA compliant written policy as to Defendant's retention and deletion practices regarding the biometrics in its possession.

33.     On information and belief, Defendant uses third-party biometric services in order to enable the biometrically-enable reverse image search on its Tea App. Thus, by using a third-party vendor to biometrically analyze Plaintiffs' facial biometrics, Defendant unlawfully disclosed Plaintiffs' and other Class members' facial biometric data to third-party biometric vendors and data storage vendors without Plaintiffs' and Class members' consent

34.     By failing to comply with BIPA, Defendant has violated Plaintiffs' substantive state rights to biometric privacy.

**B.     Defendant's IRPA Violations.**

35.     Furthermore, Defendant uses the photos of men posted on its Tea App by its users to advertise and promote its paid premium services without their consent.

36.     Specifically, users of the free version of the Tea App. are shown profiles and photos of men and encouraged to upgrade their services to Defendant's premium version in order to obtain additional information about the profiles users are seeing.

37.     Thus, Defendant publicly displays the names, photos, and profiles of all of the men within its database, including Plaintiffs, to users of the Tea App.[3] to advertise and promote

---

[3] https://www.tiktok.com/@theteapartygirls/video/7413961902533004590?embed_source=12137
4463%2C121468991%2C121439635%2C121749182%2C121433650%2C121404359%2C12149
7414%2C121477481%2C121351166%2C121772354%2C121487028%2C121679410%2C12133
1973%2C120811592%2C120810756%2C121819198%3Bnull%3Bembed_name&refer=embed

Defendant's premium services which includes reverse image searching, a background check tool, and criminal record and court document searches.[4]

38.    Defendant's paid services range from $9.99 to $19.99 monthly.[5]

39.    In or about July of 2025, Plaintiff Eric Diaz had his name and photo publicly displayed to free users of Defendant's Tea App. His name and photo were then used to advertise, promote, and entice free users to purchase Defendant's paid premium service in order to obtain more information about him and other men who were posted on the Tea App. Defendant never received permission or consent from Plaintiff Eric Diaz to use his name, image, and likeness to advertise or promote Defendant's service.

40.    In or about July of 2025, Plaintiff Mark Sullivan had his name and photo publicly displayed to free users of Defendant's Tea App. His name and photo were then used to advertise, promote, and entice free users to purchase Defendant's paid premium service in order to obtain more information about him and other men who were posted on the Tea App. Defendant never received permission or consent from Plaintiff Mark Sullivan to use his name, image, and likeness to advertise or promote Defendant's service.

41.    In or about July of 2025, Plaintiff Craig Hatfield had his name and photo publicly displayed to free users of Defendant's Tea App. His name and photo were then used to advertise, promote, and entice free users to purchase Defendant's paid premium service in order to obtain more information about him and other men who were posted on the Tea App. Defendant never received permission or consent from Plaintiff Craig Hatfield to use his name,

---

&referer_url=www.dazeddigital.com%2Flife-culture%2Farticle%2F68302%2F1%2Ftea-the-new-app-where-women-anonymously-review-men%3Futm_source%3Dflipboard&referer_video_id=7413961902533004590 (last accessed August 4, 2025).
[4] https://www.fastcompany.com/91374409/everything-to-know-about-tea-the-viral-and-controversial-app-that-lets-women-mark-men-as-red-flags
[5] https://apps.apple.com/us/app/tea-dating-advice/id6444453051 (last accessed August 1, 2025).

image, and likeness to advertise or promote Defendant's service

42.     Despite using Plaintiffs' and Class Members' names, photographs images, and likenesses for a commercial purpose to advertise and promote their paid premium service, Defendant never requested or received consent or permission from Plaintiffs or Class Members, nor did they receive compensation for the use of their identity for a commercial purpose.

## CLASS ALLEGATIONS

43.     Plaintiffs bring this action on behalf of themselves and a Class of similarly situated individuals pursuant to 735 ILCS § 5/2-801 defined as follows: All individuals whose facial biometric identifiers or biometric information were collected, captured, stored, disseminated, or otherwise used by Defendant within the state of Illinois any time within the applicable limitations period.

44.     Excluded from the Class are any members of the judiciary assigned to preside over this matter; any officer or director of Defendant; and any immediate family member of such officer or director.

45.     There are thousands of members of the Class, making the members of the Class so numerous that joinder of all members is impracticable. Although the exact number of members of the Class are currently unknown to Plaintiffs, the members can be easily identified through Defendant's records.

46.     Plaintiffs' claims are typical of the claims of the members of the Class they seek to represent, because the basis of Defendant's liabilities to Plaintiffs and the members of the Class are substantially the same, and because Defendant's conduct has resulted in similar injuries to Plaintiffs and to the members of the Class.

47.     There are many questions of law and fact common to the claims of the Plaintiffs

and the members of the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the members of the Class include, but are not limited to, the following:

a. Whether Defendant collects, captures, or otherwise obtains facial biometric identifiers or biometric information from Illinois residents;

b. Whether Defendant obtained a written release from the Class members before capturing, collecting, or otherwise obtaining their facial biometric identifiers or biometric information;

c. Whether Defendant's conduct violates BIPA;

d. Whether Defendant's BIPA violations are willful or reckless;

e. Whether Defendant used Plaintiffs' and the other Class members' names, photographs, images, and likenesses to advertise or promote their paid service;

f. Whether Defendant used Plaintiffs' and the other Class members' identities for a commercial purpose:

g. Whether Defendant received consent to use Plaintiffs' and the other Class members' identities for a commercial purpose:

h. Whether Defendants' conduct violated IRPA and;

i. Whether Plaintiffs and the members of the Class are entitled to damages and injunctive relief:

48.    Absent a class action, most members of the Class would find the cost of litigating their claims to be prohibitively expensive and would thus have no effective remedy. The class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants and promotes consistency and efficiency of adjudication.

49.    Plaintiffs will fairly and adequately represent and protect the interests of the other members of the Class they seek to represent. Plaintiffs have retained counsel with substantial

experience in prosecuting complex litigation and class actions. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the other members of the Class and have the financial resources to do so. Neither Plaintiffs nor their counsel have any interest adverse to those of the other members of the Class.

50.    Defendant has acted and failed to act on grounds generally applicable to Plaintiffs and the other members of the Class, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making injunctive or corresponding declaratory relief appropriate for the Class as a whole.

<u>COUNT I</u>
**Violations of the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.***
**(On behalf of Plaintiffs and the Class)**

51.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

52.    Defendant is a private entity under BIPA.

53.    BIPA requires a private entity, such as Defendant, to obtain informed written consent from individuals before acquiring their biometric information. Specifically, BIPA makes it unlawful to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or customer's biometric identifiers or biometric information unless [the entity] first: (1) informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject . . . in writing of the specific purpose and length of for which a biometric identifier or biometric information is being captured, collected, stored, and used; and (3) receives a written release executed by the subject of the biometric identifier or biometric information " 740 ILCS 14/15(b).

54.    Plaintiffs and the other Class members have had their "biometric identifiers," namely scans of their facial geometry, collected, captured, or otherwise obtained by Defendant

11

when Plaintiffs' and the other Class members' photos were posted on Defendant's Tea App.

55.     Defendant's practice with respect to capturing, collecting, storing, and using biometrics fails to comply with applicable BIPA requirements:

a.      Defendant failed make publicly available a written biometric retention and destruction schedule detailing the length of time for which the biometrics are stored and/or guidelines for permanently destroying the biometrics it stores, as required by 740 ILCS 14/15(a);

b.      Defendant failed to inform Plaintiffs and the members of the Class in writing that their biometrics were being collected and stored, prior to such collection or storage, as required by 740 ILCS 14/15(b)(1);

c.      Defendant failed to inform Plaintiffs and the Class in writing of the specific purpose for which their biometrics were being captured, collected, stored, and used, as required by 740 ILCS 14/15(b)(2);

d.      Defendant failed to inform Plaintiffs and the Class in writing the specific length of term their biometrics were being captured, collected, stored, and used, as required by 740 ILCS 14/15(b)(2);

e.      Defendant failed to obtain a written release, as required by 740 ILCS 14/15(b)(3); and

f.      Defendant failed to obtain informed consent to disclose or disseminate the Class's biometrics, as required by 740 ILCS 14/15(d)(1).

56.     BIPA provides for statutory damages of $5,000 for each willful and/or reckless violation of BIPA and, alternatively, damages of $1,000 for each negligent violation of BIPA. 740 ILCS 14/20(1)-(2).

57.     Defendant's violations of BIPA, a statute that has been in effect since 2008, were knowing and willful, or were at least in reckless disregard of the statutory requirements. Alternatively, Defendant negligently failed to comply with BIPA.

58.     Accordingly, with respect to Count I, Plaintiffs, individually and on behalf of the proposed Class, prays for the relief set forth below.

## COUNT II
### Illinois Right of Publicity Act, 765 ILCS 1075/1, *et seq.*
### (On behalf of Plaintiffs and the Class)

59.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

60.     The Illinois Right of Publicity Act prohibits using a person's name, photograph, image, or likeness for the purpose of advertising or promoting products, merchandise, goods, or services without written consent. *See* 765 ILCS 1075/1, *et seq.*

61.     By posting their profiles and photos as a means to entice its users to purchase Defendant's paid premium services on its Tea App, Plaintiffs and the other Class members have had their name, photograph, image or likeness used by Defendant for the purpose of promoting Defendant's paid premium service without their written consent.

62.     IRPA provides for statutory damages of the greater of $1,000 or actual damages for violations as well as punitive damages for willful violations. 765 ILCS 1075/40.

63.     Defendant's use of Plaintiffs' and the other Class members' photos, profiles, and identities in connection with Defendant's paid premium service is an essential aspect of their business model and constitutes a willful violation of IRPA, which has been in effect since 1999.

64.     Accordingly, with respect to Count II, Plaintiffs, individually and on behalf of the proposed Class, prays for the relief set forth below.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf the proposed Class, respectfully requests that this Court enter an Order:

a.     Certifying the Class as defined above, appointing Plaintiffs as class representatives and the undersigned as class counsel;

b.     Declaring that Defendant's actions, as set forth herein, violate BIPA;

13

c. Awarding injunctive and equitable relief as necessary to protect the interests of Plaintiffs and The BIPA Class by requiring Defendant to comply with BIPA;

d. Awarding statutory damages of $5,000 for each willful and/or reckless violation of the BIPA, pursuant to 740 ILCS 14/20(2);

e. Awarding statutory damages of $1,000 for each negligent violation of the BIPA, pursuant to 740 ILCS 14/20(1);

f. Declaring that Defendant's actions, as set forth herein, violate IRPA;

g. Awarding injunctive and equitable relief as necessary to protect the interests of Plaintiffs and the Class by requiring Defendant to comply with the IRPA;

h. Awarding statutory damages of $1,000 for each violation of IRPA and punitive damages for each willful violation pursuant to 765 ILCS 1075/40.

i. Awarding reasonable attorneys' fees, costs, and other litigation expenses, pursuant to 740 ILCS 14/20(3) and 765 ILCS 1075/55;

j. Awarding pre- and post-judgment interest, as allowable by law; and

k. Awarding such further and other relief as the Court deems just and equitable.

## JURY DEMAND

Plaintiffs request trial by jury of all claims that can be so tried.

14

DATED: August 7, 2025

Respectfully submitted,

ERIC DIAZ, MARK SULLIVAN, and CRAIG HATFIELD, individually and on behalf of similarly situated individuals

By: /s/ *Jordan R. Frysinger*
One of Plaintiffs' Attorneys

Eugene Y. Turin (ARDC # 6317282)
Jordan R. Frysinger (ARDC # 6335897)
McGuire Law, P.C.
55 W. Wacker Drive, 9th Floor
Chicago, IL 60601
Tel: (312) 893-7002
eturin@mcgpc.com
jfrysinger@mcgpc.com

*Attorneys for Plaintiffs and the Putative Class*

Andrea Lynn Chasteen
Will County Circuit Clerk
Twelfth Judicial Circuit Court
Electronically Filed
2025MR000408
Filed Date: 8/13/2025 12:56 PM
Envelope: 33997569
Clerk: SLH

## IN THE CIRCUIT COURT OF THE TWELFTH JUDICIAL CIRCUIT
## WILL COUNTY, ILLINOIS

| | | |
|---|---|---|
| ERIC DIAZ, MARK SULLIVAN, and CRAIG HATFIELD, individually and on behalf of similarly situated individuals, | ) ) ) ) | |
| *Plaintiffs,* | ) ) | No. 2025-MR-000408 |
| v. | ) ) | Hon. Judge Barrett |
| TEA DATING ADVICE, INC, a Delaware corporation | ) ) ) | |
| *Defendant.* | ) ) ) ) | |

## PLAINTIFFS' MOTION FOR CLASS CERTIFICATION OR, ALTERNATIVELY, FOR A DEFERRED CLASS CERTIFICATION RULING PENDING DISCOVERY

Plaintiffs Eric Diaz, Mark Sullivan, and Craig Hatfield ("Plaintiffs"), by and through their undersigned counsel, pursuant to 735 ILCS 5/2-801, move for entry of an order certifying the Class proposed below, appointing Plaintiffs as Class Representatives, and appointing Plaintiffs' attorneys as Class Counsel. Alternatively, Plaintiffs request, to the extent the Court determines further evidence is necessary to prove any element of 735 ILCS 5/2-801, that the Court defer consideration of this Motion pending a reasonable period to complete discovery. *See, e.g., Ballard RN Center, Inc. v. Kohll's Pharmacy & Homecare, Inc.*, 2015 IL 118644, at ¶¶ 42–43 (citing *Damasco v. Clearwire Corp.*, 662 F.3d 891, 896–97 (7th Cir. 2011). In support of their Motion, Plaintiffs submit the following Memorandum of Law.

Dated: August 13, 2025

Respectfully submitted,

ERIC DIAZ, MARK SULLIVAN, and
CRAIG HATFIELD, individually
and on behalf of similarly situated
individuals,

By: /s/ *Jordan R. Frysinger* 
   *One of Plaintiffs' Attorneys*

Eugene Y. Turin
Jordan R. Frysinger
MCGUIRE LAW, P.C. (Firm ID 56618)
55 W. Wacker Drive, 9th Fl.
Chicago, IL 60601
Tel: (312) 893-7002
eturin@mcgpc.com
jfrysinger@mcgpc.com

*Attorneys for Plaintiffs and the Putative Class*

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION OR, ALTERNATIVELY, FOR
<u>A DEFFERED CLASS CERTIFICATION RULING PENDING DISCOVERY</u>**

This Court should certify a class of individuals whose biometric information was collected, retained, disclosed and used without their consent or authorization and whose identities were used for a commercial purpose without consent or authorization by Defendant Tea Dating Advice, Inc. ("Defendant" or "Tea") in Illinois (the "Class").

Defendant is the owner and operator of the viral mobile phone dating application "Tea" (hereinafter the "Tea App.") which has garnered over 5.7 million users including thousands within Illinois. As part of its services, Defendant advertises its ability to use reverse image search technology to compare the photos of men provided by users through the Tea Apps with other photos previously found on the Tea App. or on the internet. Such reverse image searching is accomplished by collecting and analyzing the facial geometry of men whose photos are provided by users through the Tea App. and biometrically comparing them with other photos provided by other users of the Tea App. and on the internet. Additionally, Defendant uses the photos of men posted on its Tea App by its users to advertise and promote its paid premium services without their consent. Specifically, users of the free version of the Tea App. are shown profiles and photos of men and encouraged to upgrade their services to Defendant's premium version in order to obtain additional information about the profiles users are seeing and others.

**I.      <u>INTRODUCTION:</u>**

**A.      <u>BIPA</u>**

Recognizing the power of biometric information to identify people, and the evolving understanding of the ways in which biometric identifiers can be used, the Illinois Legislature enacted the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq*. ("BIPA") to provide

3

heightened biometric privacy rights. As a result of the need for enhanced protection of biometrics, BIPA imposes various requirements on private entities that collect or maintain individuals' biometrics, including those obtained through facial scans. Among other things, BIPA seeks to regulate "the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information." 740 ILCS 14/5(g). BIPA thus applies to entities that interact with two forms of biometric data: biometric "identifiers" and biometric "information." 740 ILCS 14/15(a)-(e). The Illinois General Assembly has identified five distinct activities that may subject private entities to liability:

     a.    possessing biometrics without a proper publicly available policy, 740 ILCS 14/15(a);

     b.    collecting, capturing, purchasing, receiving, or obtaining biometrics, 740 ILCS 14/15(b);

     c.    selling, leasing, trading, or profiting from biometrics, 740 ILCS 14/15(c);

     d.    disclosing or disseminating biometrics, 740 ILCS 14/15(d); and

     e.    failing to secure biometric data using a reasonable standard of care, 740 ILCS 14/15(e).

BIPA defines a "biometric identifier" as any personal feature that is unique to an individual, including fingerprints, voiceprints, palm scans and facial geometry. "Biometric identifiers" are physiological, as opposed to behavioral, characteristics. BIPA's text provides a non-exclusive list of protected "biometric identifiers," including "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry." 740 ILCS 14/10. (Compl., ¶ 15.)

"Biometric information" is defined by BIPA as "any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual." 740 ILCS 14/10. This definition helps ensure that information based on a biometric

4

identifier that can be used to identify a person is covered by BIPA. Collectively, biometric identifiers and biometric information are known as "biometrics." (Compl., ¶ 16.)

**B.   IRPA**

Recognizing the right of an individual to control the use of their identity for a commercial purpose, in 1999 the Illinois legislature passed the Illinois Right of Publicity Act. 765 ILCS 1075/1 *et seq*. ("IRPA"). IRPA among other things forbids the use of a person's identity for a commercial purpose without "previous written consent." 765 ILCS 1075/30. IRPA defines identity as any attribute that identifies an individual to an ordinary and reasonable viewer. 765 ILCS 1075/5. This includes the individual's "name, signature, photograph, image, likeness, or voice." *Id*. IRPA defines a commercial purpose as: "the public use or holding out of an individual's identity on or in connection with the offering for sale or sale of a product, merchandise, goods, or services; for purposes of advertising or promoting products, merchandise, goods, or services; or for the purpose of fundraising. *Id*.

**II.   FACTUAL BACKGROUND**

**A.   The Underlying Misconduct.**

As part of its services, Defendant advertises its ability to use reverse image search technology to compare the photos of men provided by users through the Tea Apps with other photos previously found on the Tea App. or on the internet. (Compl., ¶ 26.) Such reverse image searching is accomplished by collecting and analyzing the facial geometry of men whose photos are provided by users through the Tea App. (*Id*.) and biometrically comparing them with other photos provided by other users of the Tea App. (*Id*.) and on the internet. Thus, each time a photo of man is posted by a user on the Tea App., Defendant collects, stores, possesses and analyzes the facial geometry of the person featured in the photo without their consent. (*Id*.)

Additionally, as part of its business model, Defendant uses the photos of men posted on its Tea App by its users to advertise and promote its paid premium services without their consent. (Compl., ¶ 35.) Specifically, users of the free version of the Tea App. are shown profiles and photos of men and encouraged to upgrade their services to Defendant's premium version in order to obtain additional information about the profiles users are seeing and others. (*Id.* at ¶ 36.) Thus, Defendant publicly displays the names, photos, and profiles of all of the men within its database, including Plaintiffs, to users of the Tea App. to advertise and promote Defendant's premium services which includes reverse image searching, a background check tool, and criminal record and court document searches. (*Id.* at ¶ 37.)

### B. The Proposed Class

Plaintiffs bring this action on behalf of themselves and similarly situated individuals pursuant to 735 ILCS § 5/2-801. Plaintiffs seek to represent a Class defined as follows:

> All individuals whose facial biometric identifiers or biometric information were collected, captured, stored, disseminated, or otherwise used by Defendant within the state of Illinois any time within the applicable limitations period.

(Compl., ¶ 43.) As explained below, the proposed Class satisfies each of the four requirements for certification under Section 2-801 of the Illinois Code of Civil Procedure—numerosity, commonality, adequacy of representation, and fair and efficient adjudication. A class action is not just appropriate here, it is also the only way that the members of the putative Class can obtain appropriate redress for Defendant's unlawful conduct.

## III. ARGUMENT

### A. Standards for Class Certification

To obtain class certification, it is not necessary for plaintiffs to establish that they will prevail on the merits of the action. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974) ("[T]he

question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the

merits, but rather whether the requirements of Rule 23 are met." (internal quotation marks and

citation omitted)). As such, in determining whether to certify a proposed class, the Court should

accept the allegations of the complaint as true. *Ramirez v. Midway Moving & Storage, Inc.*, 378

Ill. App. 3d 51, 53 (1st Dist. 2007).

To proceed with a class action, the movants must satisfy the "prerequisites for the

maintenance of a class action" set forth in Section 2-801 of the Illinois Code of Civil Procedure,

which provides:

> An action may be maintained as a class action in any court of this State and a party
> may sue or be sued as a representative party of the class only if the court finds:
>
> (1)    The class is so numerous that joinder of all members is
> impracticable.
> (2)    There are questions of fact or law common to the class, which
> common questions predominate over any questions affecting only
> individual members.
> (3)    The representative parties will fairly and adequately protect the
> interest of the class.
> (4)    The class action is an appropriate method for the fair and efficient
> adjudication of the controversy.

735 ILCS 5/2-801. As demonstrated below, each prerequisite is established for the Class, and the

Court should therefore certify the proposed Class.

Section 2-801 is modeled after Rule 23 of the Federal Rules of Civil Procedure and "federal

decisions interpreting Rule 23 are persuasive authority with regard to questions of class

certification in Illinois." *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100, 125 (Ill. 2005).

Circuit courts have broad discretion in determining whether a proposed class meets the

requirement for class certification and ought to err in favor of maintaining class certification.

*Ramirez*, 378 Ill. App. 3d at 53. While a court may rule on class certification without requiring

further discovery, *see* Manual for Complex Litigation (Fourth) § 21.14, at 255 (2004), courts have

found that discovery is helpful prior to addressing a motion for class certification. *See, e.g., Ballard RN Center, Inc. v. Kohll's Pharmacy & Homecare, Inc.*, 2015 IL 118644, at ¶ 42 ("If the parties have yet to fully develop the facts needed for certification, then they can also ask the district court to delay its ruling to provide time for additional discovery or investigation.") (quoting *Damasco v. Clearwire Corp.*, 662 F.3d 891, 896 (7th Cir. 2011)).

All the prerequisites for class certification are satisfied here, even though Plaintiffs have not yet had an opportunity to engage in and complete discovery. However, in the interests of establishing a more fully developed record before ruling on class certification issues, the Court should defer ruling on this Motion pending the completion of discovery and submission of supplemental briefing.

### B.    The Numerosity Requirement is Satisfied

The first step in certifying a class is a showing that "the class is so numerous that joinder of all members is impracticable." 735 ILCS 5/2-801(1). This requirement is met when "join[ing] such a large number of plaintiffs in a single suit would render the suit unmanageable and, in contrast, multiple separate claims would be an imposition on the litigants and the courts." *Gordon v. Boden*, 224 Ill. App. 3d 195, 200 (1st Dist. 1991) (citing *Steinberg v. Chicago Med. Sch.*, 69 Ill.2d 320, 337 (Ill. 1977)). To satisfy this requirement plaintiffs need not demonstrate the exact number of class members but, must offer a good faith estimate as to the size of the class. *Smith v. Nike Retail Servs., Inc.*, 234 F.R.D. 648, 659 (N.D. Ill. 2006).

Plaintiffs allege that there are at least one hundred members of the Class. (Compl., ¶ 45.) Because definitive evidence of numerosity can only come from the records of Defendant and their agents, it is proper to rely upon the allegations of the Complaint in certifying the Class. *See* 2 A. Conte & H. Newberg, Newberg on Class Actions § 7.20, at 66 (stating that where numerosity

information is in the sole possession of the party opposing the class, courts generally rely on the complaint as prima facie evidence or defer ruling).

Additionally, the members of the putative Class can be easily and objectively determined from Defendant's records. (Compl., ¶ 45.) Furthermore, it would be completely impracticable to join the claims of the members of the Class, because they are disbursed throughout Illinois, and because absent a class action, few members could afford to bring an individual lawsuit over the amounts at issue in this case, because each individual member's claim is relatively small. *See Gordon*, 224 Ill. App. 3d at 200. Accordingly, the first prerequisite for class certification is met.

**C.    Common Questions of Law and Fact Predominate**

The second requirement of Section 2-801(2) is met where there are "questions of fact or law common to the class" and those questions "predominate over any questions affecting only individual members." 735 ILCS 5/2-801(2). Such common questions of law or fact exist when the members of the proposed class have been aggrieved by the same or similar misconduct. *See Miner v. Gillette Co.,* 87 Ill.2d 7, 19 (Ill. 1981); *Steinberg,* 69 Ill.2d at 342. These common questions must also predominate over any issues affecting individual class members. *See O-Kay Shoes, Inc. v. Rosewell,* 129 Ill. App. 3d 405, 408 (1st Dist. 1984). These common questions include: whether Defendant collects, captures, or otherwise obtains facial biometric identifiers or biometric information from Illinois residents; whether Defendant obtained a written release from the Class members before capturing, collecting, or otherwise obtaining their facial biometric identifiers or biometric information; whether Defendant's conduct violates BIPA; whether Defendant's BIPA violations are willful or reckless; whether Defendant used Plaintiffs' and the other Class members' names, photographs, images, and likenesses to advertise or promote their paid service; whether Defendant used Plaintiffs' and the other Class members' identities for a commercial purpose;

9

whether Defendant received consent to use Plaintiffs' and the other Class members' identities for a commercial purpose; whether Defendants' conduct violated IRPA and; whether Plaintiffs and the members of the Class are entitled to damages and injunctive relief: (Compl., ¶ 47.) Any potential individualized issues remaining after common issues are decided would be *de minimis*. Accordingly, common issues of fact and law predominate over any individual issues, and Plaintiffs have satisfied this hurdle to certification.

### D. Adequate Representation

The third prong of Section 2-801 requires that "[t]he representative parties will fairly and adequately protect the interest of the class." 735 ILCS 5/2-801(3). The class representatives' interests must be generally aligned with those of the class members, and class counsel must be "qualified, experienced and generally able to conduct the proposed litigation." *See Miner,* 87 Ill.2d at 14; *see also Eshaghi v. Hanley Dawson Cadillac Co., Inc.*, 214 Ill. App. 3d 995, 1000 (1st Dist. 1991). The purpose of this adequacy of representation requirement is "to insure that all Class members will receive proper, efficient, and appropriate protection of their interests in the presentation of the claim." *Purcell & Wardrope Chtd. v. Hertz Corp.*, 175 Ill. App. 3d 1069, 1078 (1st Dist. 1988).

In this case, Plaintiffs have the exact same interest as the members of the proposed Class. Plaintiffs have alleged that, like the other members of the Class, their biometric information was obtained and their identities used for a commercial purpose by Defendant. Plaintiffs have also alleged that Defendant did so in violation of BIPA and IRPA. Plaintiffs' pursuit of this matter against Defendant demonstrates that they will be zealous advocates for the Class. Further, proposed class counsel has regularly engaged in major complex and class action litigation in state and federal courts and has been appointed as class counsel in several complex consumer class

10

actions. Accordingly, the proposed class representatives and proposed class counsel will adequately protect the interests of the members of the Class, thus satisfying Section 2-801(3).

### E.    Fair and Efficient Adjudication of the Controversy

The final requirement for class certification under 5/2-801 is met where "the class action is an appropriate method for the fair and efficient adjudication of the controversy." 735 ILCS 5/2-801(4). "In applying this prerequisite, a court considers whether a class action: (1) can best secure the economies of time, effort and expense, and promote uniformity; or (2) accomplish the other ends of equity and justice that class actions seek to obtain." *Gordon*, 224 Ill. App. 3d at 203. In practice, a "holding that the first three prerequisites of section 2-801 are established makes it evident that the fourth requirement is fulfilled." *Gordon*, 224 Ill. App. 3d at 204; *Purcell & Wardrope Chtd.*, 175 Ill. App. 3d at 1079 ("The predominance of common issues [may] make a class action . . . a fair and efficient method to resolve the dispute."). Because numerosity, commonality and predominance, and adequacy of representation have been satisfied in the instant case, it is "evident" that the appropriateness requirement is met as well.

Other considerations further support certification in this case. A "controlling factor in many cases is that the class action is the only practical means for class members to receive redress." *Gordon*, 586 N.E.2d at 467; *Eshaghi*, 574 N.E.2d at 766 ("In a large and impersonal society, class actions are often the last barricade of…protection."). A class action is superior to multiple individual actions "where the costs of litigation are high, the likely recovery is limited" and individuals are unlikely to prosecute individual claims absent the cost-sharing efficiencies of a class action. *Maxwell*, 2004 WL 719278, at *6. This is especially true in cases involving data privacy violations, which can involve significant injury to those affected, but result in many small, individual claims. Here, absent a class action, most members of the Class would find the cost of

11

litigating their statutorily limited claims to be prohibitive, and multiple individual actions would be judicially inefficient. *Id.*

Certification of the proposed Class is necessary to ensure that Defendant's conduct becomes compliant with BIPA and IRPA, to ensure that the Class members' publicity rights and privacy rights in their biometric information are sufficiently protected, and to compensate those individuals who have had their statutorily protected biometric privacy and publicity rights violated. Were this case not to proceed on a class-wide basis, it is unlikely that any significant number of Class members would be able to obtain redress, or that Defendant would willingly implement the procedures necessary to comply with the statutes. Thus, proceeding as a class action here is an appropriate method to fairly and efficiently adjudicate the controversy.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, the requirements of 735 ILCS 5/2-801 are satisfied. Plaintiffs respectfully request that the Court enter an Order certifying the proposed Class, appointing Plaintiffs as Class Representatives, appointing McGuire Law, P.C. as Class Counsel, and awarding such additional relief as the Court deems reasonable. Alternatively, the Court should defer ruling on this Motion pending the completion of appropriate discovery and supplemental briefing.

Dated: August 13, 2025

Respectfully submitted,

ERIC DIAZ, MARK SULLIVAN, and
CRAIG HATFIELD, individually
and on behalf of similarly situated
individuals,

By:    /s/ *Jordan R. Frysinger*
       *One of Plaintiffs' Attorneys*

Eugene Y. Turin
Jordan R. Frysinger
MCGUIRE LAW, P.C. (Firm ID 56618)
55 W. Wacker Drive, 9th Fl.
Chicago, IL 60601

12

Tel: (312) 893-7002
eturin@mcgpc.com
jfrysinger@mcgpc.com
*Attorneys for Plaintiffs and the Putative Class*

## **CERTIFICATE OF FILING**

I hereby certify that on August 13, 2025, I caused the foregoing *Plaintiffs' Motion for Class Certification or, Alternatively, for a Deferred Class Certification Ruling Pending Discovery* to be electronically filed with the Clerk of Court using the Will County E-filing system.

/s/ *Jordan R. Frysinger*

This form is approved by the Illinois Supreme Court and is required to be accepted in all Illinois Circuit Courts.

| STATE OF ILLINOIS, CIRCUIT COURT | SUMMONS | For Court Use Only |
|---|---|---|
| Will _____ COUNTY | | |

| Instructions ▾ | | |
|---|---|---|
| Enter above the county name where the case was filed. | ERIC DIAZ et al., on behalf of a class, _____ **Plaintiff / Petitioner** *(First, middle, last name)* | |
| Enter your name as Plaintiff/Petitioner. | | |
| Enter the names of all people you are suing as Defendants/ Respondents. | v. | |
| Enter the Case Number given by the Circuit Clerk. | TEA DATING ADVICE, INC. _____ **Defendant / Respondent** *(First, middle, last name)* | 2025MR000408 _____ **Case Number** |

| | |
|---|---|
| In **1**, if your lawsuit is for money, enter the amount of money you seek from the Defendant/ Respondent. | **1.** **Information about the lawsuit:** Amount claimed: +$ 50,000.00 _____ |
| In **2**, enter your contact information. If more than 1 person is bringing this lawsuit, attach an *Additional Plaintiff/Petitioner Contact Information* form. | **2.** **Contact information for the Plaintiff/Petitioner:** Name *(First, Middle, Last)*: McGuire Law, P.C. Street Address, Apt #: 55 W Wacker Dr., 9th Fl City, State, ZIP: Chicago, IL 60601 Telephone: (312) 893-7002 See attached for additional Plaintiff/Petitioner contact information |
| In **3**, enter the name of the person you are suing and their address. If more than 1 person is being sued, attach an *Additional Defendant/Respondent Contact Information* form. | **3.** **Contact information for the Defendant/Respondent:** LEGALINC CORPORATE Name *(First, Middle, Last)*: TEA DATING ADVICE INC. c/o SERVICES INC. Street Address, Apt #: 131 CONTINENTAL DRIVE SUITE 305 City, State, ZIP: NEWARK, DE 19713 Telephone: (302) 894-8922 See attached for additional Defendant/Respondent contact information |

| | |
|---|---|
| **Important Information for the person receiving this form:** | You have been sued. Follow the instructions on the next page on how to appear/answer. • If you do not appear/answer the court may decide the case without hearing from you and enter a judgment against you for what the plaintiff/petitioner is asking. • Your written appearance/answer must be filed on time and in the proper form. • Forms for a written appearance/answer are available here: http://www.illinoiscourts.gov/forms/approved/default.asp If you cannot afford to pay the fee for filing your appearance/answer, ask the circuit clerk for an *application for waiver of court fees*. You should read all of the documents attached. |

**4.** **Instructions for person receiving this form (Defendant/Respondent):**

To respond to this *Summons* you must:

<table>
<tr><td>☐</td><td colspan="3">Go to court:</td></tr>
<tr><td></td><td>On this date:</td><td>_____</td><td>at this time:</td><td>_____ ☐ a.m. ☐ p.m.</td></tr>
<tr><td></td><td>Address:</td><td colspan="2">_____</td><td>Court Room: _____</td></tr>
<tr><td></td><td>City, State, ZIP:</td><td colspan="3">_____</td></tr>
</table>

☐ File a written *Appearance* and *Answer/Response* with the court:
On or before this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
Address: _____
City, State, ZIP: _____

☑ File a written *Appearance* and *Answer/Response* with the court within 30 days from the day you receive this *Summons* (listed below as the "Date of Service").
On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
Address: 100 W. Jefferson St.
City, State, ZIP: Joliet, IL, 60432

---

In **4**, the Circuit Clerk will give you the court date or appearance date, check any boxes that apply, and include the address of the court building and room where the Defendant/ Respondent must file their response.

---

**STOP!**
The Circuit Clerk will fill in this section.

**Witness this Date:** 8/11/2025 1:33 PM

**Clerk of the Court:** *Andrea Lynn Chasteen*

---

**STOP!**
The officer or process server will fill in the Date of Service.

**This *Summons* must be served within 30 days of its date, listed above.**

Date of Service: _____
*(Date to be entered by an officer or process server on the copy of this Summons left with the Defendant/Respondent or other person.)*

---

**Plaintiff/Petitioner:**

To serve this *Summons*, you must hire the sheriff (or a private process server outside of Cook County) to deliver it and your Complaint/Petition to the Defendant/Respondent. If the sheriff (or private process server outside of Cook County) tries but can't serve the *Summons*, fill out another summons and repeat this process.

---

**Attention:**

E-Filing is now mandatory for documents in civil cases with limited exemptions. To e-file, you must first create an account with an e-filing service provider. Visit http://efile.illinoiscourts.gov/service-providers.htm to learn more and to select a service provider. If you need additional help or have trouble e-filing, visit http://www.illinoiscourts.gov/faq/gethelp.asp. or talk with your local circuit clerk's office.

---

**This form is approved by the Illinois Supreme Court and is required to be accepted in all Illinois Circuit Courts.**

| STATE OF ILLINOIS, CIRCUIT COURT | AFFIDAVIT OF SERVICE OF SUMMONS AND COMPLAINT/PETITION | For Court Use Only |
|---|---|---|
| Will _____ COUNTY | | |

| Instructions | | |
|---|---|---|
| Enter above the county name where the case was filed. | ERIC DIAZ et al., on behalf of a class, | |
| | **Plaintiff / Petitioner** *(First, middle, last name)* | |
| Enter your name as Plaintiff/Petitioner. | | |
| Enter the name of the person you are suing as Defendant/Respondent. | v. | |
| Enter the Case Number given by the Circuit Clerk. | TEA DATING ADVICE, INC. | 2025MR000408 |
| | **Defendant / Respondent** *(First, middle, last name)* | **Case Number** |

**\*\*Stop. Do not complete the form. The sheriff will fill in the form.\*\***

| DO NOT complete this section. The sheriff will complete it. |
|---|

My name is _____ and I swear under oath
*First, Middle, Last*
that I served the *Summons* and Complaint/Petition on the Defendant/Respondent

_____ as follows:
*First, Middle, Last*

- [ ] Personally on the Defendant/Respondent:
  Male: [ ]  Female: [ ]  Approx. Age: _____  Hair Color: _____
  Height: _____  Weight: _____
  On this date: _____ at this time: _____ [ ] a.m. [ ] p.m.
  Address: _____
  City, State, ZIP: _____

- [ ] At the Defendant/Respondent's home:
  On this date: _____ at this time: _____ [ ] a.m. [ ] p.m.
  Address: _____
  City, State, ZIP: _____
  And left it with: _____
  *First, Middle, Last*
  Male: [ ]  Female: [ ]  Approx. Age: _____
  and by sending a copy to this defendant in a postage-paid, sealed envelope to the above address on _____ , 20 _____ .

- [ ] On the Corporation's agent, _____
  *First, Middle, Last*
  On this date: _____ at this time: _____ [ ] a.m. [ ] p.m.
  Address: _____
  City, State, ZIP: _____

Enter the Case Number given by the Circuit Clerk: 2025MR000408

| DO NOT complete this section. The sheriff, or private process server will complete it. |
| --- |

**By:**

_____
*Signature*

_____
*Print Name*

**FEES**

| By certified/registered | $ _____ |
| Service and Return | $ _____ |
| Miles: _____ | $ _____ |
| Total      $ _____ | |

# Family Remote Court Instructions for Participants

Court in the Annex rooms 300, 301, 306, 307, 308, 312 and Room 313 in the main courthouse will be conducted via Zoom until further notice. Zoom is **FREE** and can be used with a computer, laptop, I-Pad, smart phone with a camera, or landline telephone. Instructions are below.

---

## Meeting ID

The Zoom meeting ID number for each judge is listed below and will always remain the same:

J. Archambeault (Rm 701) – 951 2005 0302
J. Dow (Rm 704) – 958 2123 0845
J. Ewanic (Rm 705) - 955 6908 6067
J. Garcia (Rm 702) – 756 136 6153
J. Kennison (Rm 703) - 972 3796 2180
J. Lund (Rm 602) – 860 206 7112
J. Nash (Rm 601) - 984 7035 0576

**You should login 10-15 minutes early** and wait in order to check-in with the Clerk before the judge starts the court call (you may be in a waiting room until admitted).

## Password

Once you login, you will be asked for a password to join the meeting.

The password for each judge is listed below and will always remain the same:

J. Archambeault (Rm 701) – 313
J. Dow (Rm 704) – 753923
J. Ewanic (Rm 705) – 011645
J. Garcia (Rm 702) – 30734
J. Kennison (Rm 703) - 578874
J. Lund (Rm 602) –301301
J. Nash (Rm 601) - 574662

---

### Procedure for attorneys or self-represented litigants using a computer with a camera & microphone:

1. Create a Zoom account by going to Zoom.us and click "sign up, it's free" and follow the prompts from there.

2. Make sure your email address and phone numbers are current with the Circuit Clerk's office.

3. Once Zoom opens, click "join a meeting" on the upper right.

4. Message box will appear asking for meeting ID number. Input the assigned judge's meeting ID.

5. Message box will appear. Click "open Zoom."

6. Message box will ask for the password. Input the assigned judge's password.

7. Screen should load, showing your face. Click "join with video."

8. Message box will appear, click "join with computer audio."

### Procedure for using Zoom on cell phone:

1. Download the Zoom cloud meeting app on your cell phone.

2. Open the app and tap "Sign Up" (by following the prompts).

3. Tap "Join."

4. Input the meeting ID number or personal link name. Input assigned judge's meeting ID.

5. Message box will ask for the password. Input the assigned judge's password.

6. Tap 'Join with video."

7. Tap "call using internet audio."

8. Tap anywhere on the screen to make the header bars appear.

### Procedure for using Zoom on a landline or phone without Zoom app:

1.Dial one of the below US dial-in numbers:

+1 312 626 6799
+1 929 436 2866
+1 301 715 8592
+1 669 900 6833
+1 253 215 8782
+1 346 248 7799

2. When prompted, input the assigned judge's meeting ID as listed above, followed by the pound key (#).

3. When prompted, input the assigned judge's password as listed above, followed by the pound key (#).

Rev. 11/20

**The Judge shall mute participants until their case is called.**

**Failure to appear whether through the Zoom call or in person, may result in a default being entered against you.**

# Remote Court Instructions for Participants

Court in the Annex rooms A117, A129, A201, A227, A236, Rms 803, 1001 & 1002 in the main courthouse and Rm 2 in the River Valley Justice Center will be conducted via Zoom until further notice. Zoom is free and can be used with a laptop, smart phone with a camera, landline, or other telephone. Instructions are below.

## Meeting ID

The Zoom meeting ID number for each judge is listed below and will always remain the same. You may login early and wait for the judge to log in to start the meeting (you may be in a waiting room until admitted).

J. Anderson (Rm A236) – 930 2919 0133
J. Jarz (Rm 803 ) – 919 7619 1672
J. O'Leary (Rm A227) - 556 881 0712
J. Osterberger(Rm 1002)– 954 9877 7674
J. Petrungaro (Rm A117) – 992 7448 0487
J. Rickmon (Rm A201) – 959 2357 1680
J. Rossi (Rm A129) - 912 2466 3711
J. Allen(Rm 1001)- 719 811 8159
J. Pavich (Rm 002) - 963 988 4732

## Password

Once you login, you will be asked for a password to join the meeting.

The password for each judge is listed below and will always remain the same:

J. Anderson (Rm A236) – 236236
J. Jarz (Rm 803 ) – 311311
J. O'Leary (Rm A227) - 227227
J. Osterberger(Rm 1002)– 111111
J. Petrungaro (Rm A117) - 117117
J. Rickmon (Rm A201) – 201201
J. Rossi (Rm A129) - 129129
J. Allen (Rm 1001)- 002002
J. Pavich (Rm 002) - 002002

## Procedure for attorneys or self-represented litigants using a computer with a camera & microphone:

1. Create a Zoom account by going to Zoom.us and click "sign up, it's free" and follow the prompts from there.

2. Make sure your email address and phone numbers are current with the Circuit Clerk's office.

3. Once Zoom opens, click "join a meeting" on the upper right.

4. Message box will appear asking for meeting ID number. Input the assigned judge's meeting ID.

5. Message box will appear. Click "open Zoom."

6. Message box may ask for the password. Input the assigned judge's password.

7. Screen should load, showing your face. Click "join with video."

8. Message box will appear, click "join with computer audio."

## Procedure for using Zoom on cell phone:

1. Download the Zoom cloud meeting app on your cell phone.

2. Open the app and tap "Sign Up" (by following the prompts).

3. Tap "Join."

4. Input the meeting ID number or personal link name. Input assigned judge's meeting ID.

5. Message box may ask for the password. Input the assigned judge's password.

6. Tap 'Join with video."

7. Tap "call using internet audio."

8. Tap anywhere on the screen to make the header bars appear.

## Procedure for using Zoom on a landline or phone without Zoom app:

1.Dial one of the below US dial-in numbers:

| United States of America | +1 312 626 6799 |
| | +1 929 436 2866 |
| | +1 301 715 8592 |
| | +1 669 900 6833 |
| | +1 253 215 8782 |
| | +1 346 248 7799 |

2.

2. When prompted, input the assigned judge's meeting ID as listed above, followed by the pound key (#).

3. When prompted, input the assigned judge's password as listed above, followed by the pound key (#).

**The Judge may mute participants until their case is called.**

**Failure to appear whether through the Zoom call or in person, may result in a default being entered against you.**

Andrea Lynn Chasteen
Will County Circuit Clerk
Twelfth Judicial Circuit Court
Electronically Filed
2025MR000408
Filed Date: 9/2/2025 2:04 PM
Envelope: 3426114D
Clerk: GA

**IN THE CIRCUIT COURT OF THE TWELFTH JUDICIAL CIRCUIT
WILL COUNTY, ILLINOIS**

Eric  Diaz, Mark Sullivan and Craig Hatfield
**Plaintiff /Petitioner**
**vs**

Tea Dating Advice, Inc.
**Defendant/Respondent**

CASE NO: 2025MR000408

# APPEARANCE BY ATTORNEY

I, Bonnie Keane DelGobbo , an attorney, enter my appearance in this case on behalf of:
First          Middle          Last

Tea Dating Advice, Inc.
Name

☐ Plaintiff/Petitioner

☑ Defendant/Respondent

☐ Other _____

as:

☐ Additional Counsel          ☑ Regular Counsel

☐ Court Appointed Counsel     ☐ Substitute Counsel

☐ Guardian Ad Litem           ☐ _____

By using this form, I agree to receive court documents at this email address.

bdelgobbo@bakerlaw.com
Email

/s/ Bonnie Keane DelGobbo
Attorney Signature
Bonnie Keane DelGobbo
Attorney Name
Baker & Hostetler LLP
Law Firm
6309394
ARDC #

One N. Wacker Drive, Suite 3700
Street Address
Chicago, Illinois 60606
City, State, Zip
(312) 416-8185
Telephone #
(312) 416-6201
Fax #

**ANDREA LYNN CHASTEEN, CLERK OF THE CIRCUIT COURT OF WILL COUNTY**

☐ Original– Court     ☐ Copy – Plaintiff     ☐ Copy – Defendant          **17 B** Revised (04/18)