# Exhibit B

E-FILED
Tuesday, 25 May, 2021 09:47:39 AM
Clerk, U.S. District Court, ILCD

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| COLIN COTTINGHAM,<br>Individually and on behalf of all others<br>similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE ULTIMATE SOFTWARE<br>GROUP, INC.,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 20-cv-1172-JES-JEH |

**ORDER**

This matter is now before the Court on Plaintiff's Motion (Doc. 18) to Remand[1] his Claim under 740 ILCS 14/15(a) to the Circuit Court of Mclean County, Illinois. Defendant has filed a Response (Doc. 22) in Opposition to Plaintiff's Motion and Plaintiff has filed a Reply (Doc. 24). Additionally, Defendant has filed a Motion for Leave to file a Sur-Reply (Doc. 25), which the Court now GRANTS and considers in the Opinion below. For the reasons set forth below, Plaintiff's Motion (Doc. 18) to Remand is GRANTED.

**BACKGROUND**

On March 4, 2020, Plaintiff Colin Cottingham filed a Complaint, individually and on behalf of similarly situated individuals, in the Circuit Court of McLean County, Illinois. Doc. 1-1, at 6-16. Cottingham is an individual who asserts that he used the technology of Defendant UKG Inc., formerly known as The Ultimate Software Group, Inc., ("UKG")[2] to clock in and out of work at an unidentified employer. *Id*. UKG is a Florida-based vendor of timekeeping

---

[1] Plaintiff only seeks to sever and remand the portion of Count One for violations under 740 ILCS 14/5(a). As such, the Court's subject matter jurisdiction as to the remaining portion of Count One for violations of 740 ILCS 14/5(b) and 740 ILCS 14/5(d) are not at issue in this Opinion. Nor does the Court find jurisdiction lacking for those claims.
[2] *See* Doc. 21 (providing notice pursuant to Fed. R. Civ. P. 7.1 and Local Rule 11.3 that Defendant The Ultimate Software Group, Inc. has changed its corporate name to UKG Inc. ("UKG")).

technology and payroll services. Doc. 1, at 1. In a single-count Complaint, Cottingham alleges that UKG violated three sections of the Illinois Biometric Privacy Act ("BIPA"), 740 ILCS 14 (2008): (1) Section 15(a), which requires, among other things, that private entities in possession of biometric information establish a publicly-available biometric data retention and destruction policy; (2) Section 15(b), which requires private entities collecting biometric data to make certain disclosures and obtain the subject's informed consent prior to collection; and (3) Section 15(d), which prohibits private entities from disclosing an individual's biometric data without their consent. On April 24, 2020, UKG removed this action to this Court pursuant to 28 U.S.C. §§ 1441, 1446, 1332(d), and 1453(b). On December 15, 2020, after extensions of time and a stay were granted in this case, Plaintiff filed a Motion to Remand his 740 ILCS 14/15(a) claim.

**LEGAL STANDARD**

As the party invoking federal jurisdiction by removing this case, UKG bears the burden of establishing Cottingham's Article III standing. *Collier v. SP Plus Corp.*, 889 F.3d 894, 896 (7th Cir. 2018); *Sabrina Roppo v. Travelers Com. Ins. Co*., 869 F.3d 568, 578 (7th Cir. 2017). To establish standing, UKG must show Plaintiff "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016); (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–561 (1992)). The injury must be both "concrete and particularized." *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 180–181 (2000). A statutory violation does not satisfy the injury-in-fact element unless there is "'an appreciable risk of harm' to the underlying concrete interest that Congress sought to protect by enacting the statute." *Groshek v. Time Warner Cable, Inc.*, 865 F.3d 884, 887 (7th Cir. 2017) (quoting *Meyers v. Nicolet Rest. of De Pere, LLC*, 843 F.3d 724, 727 (7th Cir. 2016)).

## DISCUSSION

This putative BIPA class action is a case between individuals and a third-party timekeeping vendor. At issue here is Cottingham's standing to bring his claim under section 15(a) of BIPA, which requires private entities that possess biometric data to develop, publish, and comply with a written policy that includes a data retention schedule and destruction guidelines. 740 ILCS 14/15(a).[3] Like many other motions and opinions circulating in the district courts, Plaintiff's Motion is premised on the Seventh Circuit Court of Appeals' precedential opinion in *Bryant v. Compass Grp. USA, Inc.*, 958 F.3d 617, 626 (7th Cir. May 5, 2020), *as amended on denial of reh'g and reh'g en banc* (June 30, 2020). The Parties also discuss at length *Fox v. Dakkota Integrated Sys., LLC*, 980 F.3d 1146 (7th Cir. Nov. 17, 2020) and *Thornley v. Clearview AI, Inc.*, 984 F.3d 1241 (7th Cir. Jan. 14, 2021). The dispute as to remand centers on how one reads the above cited cases. Therefore, the Court will briefly discuss these cases, which were addressed by the Seventh Circuit in the last year.

In *Bryant*, the plaintiff alleged in part that the defendant failed to make a publicly available retention schedule and guidelines for permanently destroying the biometric identifiers and information it collected and stored. 958 F.3d at 619. The Seventh Circuit held that unlike BIPA's informed consent regime, "the duty to disclose under section 15(a) is owed to the public generally, not to particular persons whose biometric information the entity collects." *Id.* at 626. Because the plaintiff did not allege a particularized harm resulting from the defendant's 15(a)

[3] *See* 740 ILCS 14/15(a) which states:

> A private entity in possession of biometric identifiers or biometric information must develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first. Absent a valid warrant or subpoena issued by a court of competent jurisdiction, a private entity in possession of biometric identifiers or biometric information must comply with its established retention schedule and destruction guidelines.

violation, she lacked Article III standing for her section 15(a) claim. *Id.* at 619, 626.[4] In rendering its decision, the court in effect described section 15(a) as containing two provisions: one requiring "the development of a 'written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information'" and another provision "requiring compliance with the established retention schedule and destruction guidelines." *Id*. at 626 (quoting 740 ILCS 14/15(a)). Notably, the court declined to address the latter provision of section 15(a) requiring compliance. *Id*.

In *Fox*, 980 F.3d at 1146, the Seventh Circuit addressed the question left open in *Bryant*. There, an employee alleged her former employer violated "the full range of its section 15(a) duties by failing to develop, publicly disclose, and comply with a data-retention schedule and guidelines for the permanent destruction of biometric data when the initial purpose for collection ends." *Id.* at 1154. She claimed these violations resulted in the unlawful retention of her data after she left the employer and unlawful sharing of her data with a third party. *Id*. Unlike *Bryant*, the court found plaintiff had standing to bring her section 15(a) claim. In comparing section 15(a) to the informed-consent regime under section 15(b), the court concluded that "[a]n unlawful retention of biometric data inflicts a privacy injury in the same sense that an unlawful collection does." *Id.* at 1154. "[S]ection 15(b) expressly conditions lawful collection of biometric data on informed consent," just as "section 15(a) expressly conditions lawful retention of biometric data on the continuation of the initial purpose for which the data was collected." *Id.* at 1155. Therefore, the court held unlawfully retaining a person's biometric data results in an injury just as concrete and particularized as unlawfully collecting a person's biometric data. *Id.* at 1155.

[4] In contrast, the *Bryant* court also held the plaintiff met the requirements for Article III standing on her section 15(b) claim because the defendant deprived the plaintiff of the ability to give informed consent by withholding substantive information to which she was entitled, thereby creating a concrete and particularized injury. *Id.* at 626.

*Thornley* marked the first occasion where the Seventh Circuit considered Article III standing for a violation of section 15(c). 984 F.3d at 1244. This section of BIPA prohibits private entities in possession of a biometric identifier or information from profiting from such data. 740 ILCS 14/15(c). Before addressing the plaintiff's standing to bring such claim, the court summarized its holdings in its prior decisions concerning BIPA. *Id.* at 1245. In discussing the differing treatment of the same BIPA section in *Bryant* and *Fox*, the Seventh Circuit reiterated "the result of the standing inquiry for the identical section of a statute will depend on what that section provides and what the plaintiff has alleged." *Id.* at 1246.[5] It was no secret in *Thornley* that the plaintiffs drafted their allegations and the scope of the proposed class with care to avoid federal court. *Id.* at 1248. The complaint conceded that none of the plaintiffs or class members "suffered any injury as a result of the violations of Section 15(c) of BIPA other than the statutory aggrievement alleged in Paragraph 38." *Id.* at 1246. As such, the proposed class only included Illinois citizens whose biometric identifiers and information were included in Clearview AI's database without their knowledge and who only suffered statutory aggrievement. *Id*. The Seventh Circuit held without an alleged concrete and particularized harm resulting from the prohibited commercial transaction, the plaintiffs only asserted violations of a general duty akin to the section 15(a) allegation in *Bryant*. *Id.* at 1247. Likewise, the *Thornley* plaintiffs lacked Article III standing based on the allegations in their complaint. *Id.* at 1248-49.

Here, Cottingham argues *Thornley* supports remand while UKG asserts it is wholly inapplicable to Court's standing analysis because *Thornley* only addressed section 15(c) claims,

---

[5] *See e.g., id.* at 1247.

> We have no quarrel with the idea that a different complaint might reflect that type of equivalence. A plaintiff might assert, for example, that by selling her data, the collector has deprived her of the opportunity to profit from her biometric information. Or a plaintiff could assert that the act of selling her data amplified the invasion of her privacy that occurred when the data was first collected, by disseminating it to some unspecified number of other people. Perhaps a plaintiff might assert that the scraping of data from social media sites raises the cost of using those sites in some respect . . . .

which are not alleged here. Docs. 24; 25-1. UKG's view on the impact of *Thornley* is misguided. In evaluating Cottingham's section 15(a) claim, the Court can consider how the Seventh Circuit has analyzed standing when it has addressed other sections of BIPA. *Cf.* Doc. 25-1, at 4. The Seventh Circuit has done that itself. *See Fox*, 980 F.3d at 1155 (analogizing the privacy injury in section 15(b) to section 15(a)); *Thornley*, 984 F.3d at 1247 (comparing the general regulatory violation of section 15(a) to the general duty in section 15(c)). But what the Court cannot do is haphazardly lump all of the subsections of BIPA violations together to find standing exists for the entire case. Based on *Bryant*, *Fox*, and *Thornley*, the Court must consider the violations alleged under each subsection to determine whether that portion of the case should be remanded. This is not to say that subsections and privacy injuries cannot overlap or amplify one another. However, based on these allegations in this Complaint, Cottingham has not alleged any connection between the section 15(a) and section 15(d) violations as UKG suggests. The Court further disagrees that *Thornley* is wholly inapplicable as *Thornley* exemplifies a plaintiff is the master of her own complaint and in particular, the result of that mastery in a BIPA case.

Turning back to *Bryant* and *Fox*, after reviewing the above cases and the Parties' differing descriptions of them, the Court recognizes a minor distinction in how the Seventh Circuit framed section 15(a). *Bryant* described it as containing two provisions, which correspond to the two sentences in section 15(a) while *Fox* focuses on the three duties of section 15(a)—development, publication, and compliance. Regardless of whether one frames section 15(a) as two provisions or three duties, the result of the injury-in-fact inquiry here is the same: plaintiff has not alleged a concrete and particularized injury resulting from UKG's 15(a) violation.

In his briefs, Cottingham likens his allegations to that of the plaintiff in *Bryant* who alleged the defendant violated the first provision of section 15(a) and *Fox* did not limit or alter

*Bryant.* Docs. 18; 24. In contrast, UKG argues Cottingham cannot rely on *Bryant* because its holding was extremely narrow and Cottingham alleges violations of the "full panoply" of section 15(a) duties, therefore standing exists under *Fox* and its progeny. Docs. 22; 25-1. Essential to the disagreement about impact of *Fox*, the Parties debate the meaning of "full panoply." In reading the Seventh Circuit's BIPA opinions, the Court takes "full panoply" specific to section 15(a) to include three components—the duty to establish, publicly disclose, and comply with. Likewise, it is clear a violation of a failure to publicly disclose a retention policy, without more, does not create a concrete and particularized injury, but a failure to establish and comply with a retention and destruction policy inflicts an injury giving rise to Article III standing. Moreover, the language from the Seventh Circuit in *Thornley* describing *Bryant* and *Fox* is clear: "[w]e left open the question whether a different allegation under section 15(a)—one based on the language requiring a collector to comply with its established retention and destruction criteria—might call for a different result . . . The question under section 15(a) that we reserved in *Bryant* did not remain unexamined for long." *Thornley*, 984 F.3d at 1245. Thus, *Thornley* reiterates that the focus of the injury described in *Fox* was the failure to comply with the policy.

In analyzing standing, the allegations in the complaint matter. *Pennell v. Glob. Tr. Mgmt., LLC*, 990 F.3d 1041, 1045 (7th Cir. 2021) (citing *Thornley*, 984 F.3d at 1246, 1248). Under this basis, the Court need not entertain UKG's arguments that alter the injuries alleged in the Complaint. *Id*. Having established that "full panoply" refers to three duties, the Court finds Cottingham does not allege the fully panoply of section 15(a) violations but rather two duties—violations of establishment and publication—also referred to as provision one of section 15(a) in *Bryant*. Based on UKG's briefing, it either incorrectly asserts Cottingham also alleges a compliance violation or it assumes *Bryant* and *Fox* left open the possibility that a failure to

establish a policy may satisfy Article III standing. However, even if a failure to establish a policy could confer standing, such connection to a concrete and particularized injury is lacking here.

While the Class Action Fairness Act, 28 U.S.C. § 1453, of course grants defendants the opportunity to remove a case to federal court where appropriate, it is ultimately the plaintiff who must prove their case. Neither a defendant nor the Court can force a plaintiff to pursue relief for an injury the plaintiff does not wish to allege. Nowhere in Cottingham's Complaint does he specifically allege UKG failed to delete his data. While his Complaint could be considered ambiguous as to whether he alleged UKG failed to delete biometric data within the time constraints prescribed by 15(a),[6] Cottingham cleared up any confusion in his Motion to Remand. He unequivocally declared, "Plaintiff seeks relief only under Section 15(a)'s first provision, and does not allege that Defendant . . . has failed to delete or otherwise unlawfully retained his biometric data." Plaintiff is the master of his own complaint. *See Bastien v. AT&T Wireless Servs., Inc.*, 205 F.3d 983, 986 (7th Cir. 2000) (citing *Franchise Tax Bd. v. Construction Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 10 (1983); *Taylor v. Anderson*, 234 U.S. 74, 75–76 (1914); *Lister v. Stark*, 890 F.2d 941, 943 (7th Cir. 1989)). If Plaintiff does not raise the issue of compliance with a data retention and deletion schedule, then the Court will not infer it for him.

In considering whether UKG's failure to establish a policy confers Article III standing, the Court disagrees with UKG's argument premised on the idea that its alleged failure was the same "unlawful retention" described in *Fox*. In *Fox*, the Seventh Circuit concluded that "section 15(a) expressly conditions *lawful retention* of biometric data on the continuation of the initial purpose for which the data was collected." 980 F.3d at 1155 (emphasis added). The Court views

[6] Similarly, Plaintiff's Motion to Stay pending the outcome in *Fox* was based on the belief that *Fox* would determine "whether a plaintiff has Article III standing to pursue claims based on the second 15(a) provision—the provision relating to the defendant's compliance with its biometric retention and destruction policy"—an issue which *Bryant* did not address. Doc. 15, at 5. That request suggests Plaintiff was or considered raising a failure to delete violation.

*Fox* to mean the "unlawful retention" referred to the failure to "permanently destroy[] biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first." 740 ILCS 14/15. UKG further glosses over the fact that the cases it cites to show standing are cases in which the defendant failed to establish and *comply with* the policy, which was the same issue in *Fox*. The focus of injury was not on the *establishment* failure but rather the *compliance with*. This focus is further supported by the litany of cases in which the Seventh Circuit has addressed Article III standing in the context of consumer protection laws. *See, e.g., Markakos v. Medicredit, Inc.*, No. 20-2351, 2021 WL 1937267, at *1 (7th Cir. May 14, 2021) (collecting cases addressing the FDCPA where the Seventh Circuit foreclosed argument that *any* FDCPA violation causes an injury in fact). "Seventh [C]ircuit precedent thus faithfully holds that a statutory violation alone does not cause an injury in fact; instead, the violation must have 'harmed or presented an appreciable risk of harm to the underlying concrete interest that Congress sought to protect.'" *Id.* at *3 (quoting *Casillas v. Madison Ave. Assocs., Inc.*, 926 F.3d 329, 333 (7th Cir. 2019)). As to the violations here, an entity could retain and delete an individual's biometric data or information within the time frame required by section 15(a) without having memorialized a policy. Put another way, seeing as Cottingham concedes UKG did not fail to delete his data, nothing would change if UKG had or had not established a data retention policy—it still would have deleted the data.

In considering the caselaw discussed above and the allegations in Cottingham's Complaint, remand is appropriate. The Court agrees that Cottingham's section 15(a) allegation is more akin to the injury in *Bryant* than *Fox*. Should Plaintiff seek to change to his section 15(a) claim to include a failure to comply, this portion of the claim *may* become removable. *See*

*Thornley*, 984 F.3d at 1248 ("And if the plaintiffs change their tune in the state court, Clearview will be able to attempt to remove again to federal court, though we do not predict the outcome of such an effort. *See* 28 U.S.C. § 1446(b)(3), (c)"). Accordingly, Cottingham's section 15(a) claim is severed and remanded to state court. *See Bergquist v. Mann Bracken, LLP*, 592 F.3d 816, 819 (7th Cir. 2010) (citing 28 U.S.C. §§ 1367(c)(3), 1441(c)) ("If some parts of a single suit are within federal jurisdiction, while others are not, then the federal court must resolve the elements within federal jurisdiction and remand the rest— unless the balance can be handled under the supplemental jurisdiction."); *Gaffney v. Riverboat Servs. of Ind., Inc.*, 451 F.3d 424, 443-44 (7th Cir. 2006) (approving severance under Fed. R. Civ. P. 21 where the validity of the remaining claims "does not depend, as a matter of law, on the outcome of the severed claims").

**CONCLUSION**

For the reasons set forth above, Plaintiff Cottingham's Motion (Doc. 18) to Remand his claim under 740 ILCS 14/15(a) is GRANTED.

Signed on this 25th day of May, 2021.

s/ James E. Shadid
James E. Shadid
United States District Judge