**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| SMONE HONEYCUTT, JERESA WHITE, SHANTEL SAGO, JASMINE VALDEZ, RODNEKA PERRY, ERIC DIAZ, MARK SULLIVAN, and CRAIG HATFIELD, individually and on behalf of similarly situated individuals, | ) | Case No. 1:25-cv-10885 |
| | ) | Hon. Martha Pacold |
| *Plaintiffs,* | ) | |
| v. | ) | |
| TEA DATING ADVICE, INC., a Delaware corporation, | ) | |
| *Defendant.* | ) | |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COUNT III OF PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT**

Eugene Y. Turin
Jordan R. Frysinger
Ethan D. Coniglio
McGuire Law, P.C. (Firm ID 56618)
55 W. Wacker Drive, 9th Floor
Chicago, IL 60601
Tel: (312) 893-7002
eturin@mcgpc.com
jfrysinger@mcgpc.com
econiglio@mcgpc.com

Jay Kumar
Jay Kumar Law (Attorney No. 60100)
211 W. Wacker Dr, Suite 200B
Chicago, IL 60606
Tel: (312) 767-7903
Jay@jaykumarlaw.com

Ryan F. Stephan
James B. Zouras

Catherine Mitchell Duffy
STEPHAN ZOURAS, LLC
222 W. Adams Street, Suite 2020
Chicago, Illinois 60606
312.233.1550
312.233.1560
rstephan@stephanzouras.com
jzouras@stephanzouras.com
cmitchell@stephanzouras.com
Firm ID: 43734

*Attorneys for Plaintiffs and the Putative Class*

## I. INTRODUCTION

Plaintiffs bring this class action Complaint alleging that Defendant Tea Dating Advice, Inc. ("Tea") violated their rights under the Illinois Right of Publicity Act ("IRPA" or "Act"), 765 ILCS § 1075/1 *et seq*. IRPA prohibits using an individual's identity for commercial purposes without their prior written consent and provides for a private cause of action for a violation of the Act. 765 ILCS § 1075/30. Plaintiffs allege that Defendant violated IRPA by using their identities to promote subscriptions to Defendant's premium services hosted on its mobile application without their written consent.

Defendant's partial motion to dismiss (Dkt. 28) depends on recasting those allegations as a claim about the mere operation of a free forum. That is not what Plaintiffs have pleaded. Plaintiffs' Consolidated Class Action Complaint ("Complaint," Dkt. 23) alleges that Defendant uses the photos of men posted on the Tea App "to advertise and promote its paid premium services"; that users of the free version are shown men's profiles and photos and encouraged to upgrade to the premium version to obtain additional information about the profiles they are viewing; and that Defendant publicly displays the names, photos, and profiles of men in its database (including the Non-User Plaintiffs) to promote paid services such as reverse image searching, background checks, and criminal-record and court-document searches. (Compl., ¶¶ 56–58.) The Complaint further alleges that Plaintiffs Diaz, Sullivan, and Hatfield each had this name and photo publicly displayed to free users and then used to "advertise, promote, and entice" those users to purchase Defendant's paid premium service to obtain more information about him and other men posted on the Tea App. (*Id.* at ¶¶ 60–62.) These are not allegations of incidental revenue generation from third-party content; they are allegations that Defendant used Plaintiffs' identities as free-preview content to sell paid subscription services. *See Lukis v. Whitepages Inc.*, 454 F.

Supp. 3d 746, 760–61 (N.D. Ill. 2020); *Bonilla v. Ancestry.com Operations Inc*., 574 F. Supp. 3d 582, 594–95 (N.D. Ill. 2021).

Federal district courts have consistently held that such allegations are "a textbook example under the IRPA of using a person's identity for a commercial purpose," and thus state a cause of action. *Lukis v. Whitepages, Inc*., 454 F. Supp. 3d 746, 760 (N.D. Ill. 2020) ("*Lukis I*"). *See also Lukis v. Whitepages, Inc*., 542 F. Supp. 3d 831, 838 (N.D. Ill. 2020) ("*Lukis II*"); *Bonilla v. Ancestry.com Operations, Inc*., 574 F. Supp. 3d 582, 595 (N.D. Ill. 2021) (allegations that defendant used yearbook records to sell subscription services to potential customers is a "textbook example under the IRPA of using a person's identity for a commercial purpose") (citing *Lukis I*); *Krause v. RocketReach, LLC*, 561 F. Supp. 3d 778, 782-83 (N.D. Ill. 2021) (applying *Lukis I* and stating "[t]he same result obtains on the allegations here"); *Hoffower v. Seamless Contacts, Inc*., No. 22-cv-2079, 2022 WL 17128949, at *2 (N.D. Ill. Nov. 22, 2022); *Siegel v. Zoominfo Tech.*, LLC, No. 21-cv-2032, 2021 WL 4306148, at *3 (N.D. Ill. Sept. 22, 2021); *Green v. Datanyze, LLC*, No. 23-cv-1605, 2024 WL 168123, at *2 (N.D. Ill. Jan. 16, 2024); *Gaul v. Truth Now*, LLC, No. 21-cv-1314, 2022 WL 3647257, at *7 (C.D. Ill. Aug. 24, 2022); and *Gaul v. CheckPeople*, LLC, No. 21-cv-1313, 2022 WL 3212067, at *3-4 (C.D. Ill. Aug. 9, 2022).

Despite authority in support of Plaintiffs' allegations, Defendant relies on stale affirmative defenses and impermissibly distorts the allegations in Plaintiffs' Complaint to make its arguments in favor of dismissal. However, at this stage of the case, dismissal is not warranted for failure to state a claim, immunity under the Communications Decency Act, or infringement of the First Amendment. At minimum, Defendant's characterization that Tea merely operates a free forum and does not use Plaintiffs' specific identities to promote any product or service asks the Court to reject the Complaint's well-pleaded allegations and draw inferences against Plaintiffs, which is improper

on a Rule 12(b)(6) motion.

## II. BACKGROUND

Defendant owns an application called "Tea" (hereinafter the "Tea App"). (Compl., ¶ 31.) The Tea App offers background information about men who users have dated. (*Id*. at ¶ 57.) Users are initially shown free preview profiles and photos of the men, but if users want to obtain more information about the men, they must pay for additional premium features such as reverse image searching, a background check tool, and criminal record and court document searches. (*Id*. at ¶ 58.) Defendant specifically advertises and charges users a fee to use its reverse image search premium service to compare the photos of men provided by users through the Tea App with other photos previously found on the Tea App. (*Id*. at ¶¶ 46, 54.)

The core of the Non-User Plaintiffs' (the individuals who did not have Tea accounts that were posted on the platform) claims is that Defendant violates IRPA where its free previews use the Non-User Plaintiffs' identities for the commercial purpose of advertising Defendant's premium services. (*Id*. at ¶¶ 56–58.) Defendant's partial motion to dismiss presents three arguments that courts in this District have already addressed. First, whether allegations that Defendant's free previews using non-user's identities to promote separate paid services is sufficient to state an IRPA claim; second, whether IRPA is preempted by the Communications Decency Act ("CDA"), 47 U.S.C. § 230(c)(1); and third, whether IRPA, applied to Defendant's conduct, is an impermissible infringement of the First Amendment. Each of these arguments fails for the reasons described below.

## III. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) "tests the sufficiency of the complaint, not the merits of the case." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012).

Plaintiffs need not provide detailed factual allegations to survive a motion to dismiss, but they must provide enough factual support to raise their right to relief above a speculative level. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A claim must be facially plausible, meaning that the pleadings must "allow ... the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court must also consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in Plaintiffs' brief opposing dismissal, so long as those additional facts "are consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019-20 (7th Cir. 2013) (internal citation omitted). In reviewing a Rule 12(b)(6) motion, a court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Huston v. Hearst Commc'ns, Inc.*, 53 F.4th 1097, 1099 (7th Cir. 2022).

## IV. ARGUMENT

### A. Plaintiffs State a Claim Under IRPA.

IRPA was enacted to recognize individuals' "right to control and to choose whether and how to use [their] individual identity for commercial purposes." *CheckPeople*, 2022 WL 3212067, at *2 (citing 765 ILCS § 1075/10).

To state a claim under IRPA, "the plaintiff must allege: (1) an appropriation of the plaintiff's identity, (2) without the plaintiff's written consent, and (3) for defendant's commercial purpose," *Huston v. Hearst Communications, Inc.*, 53 F.4th 1097, 1099 (7th Cir. 2022) (citing 765 ILCS § 1075/30(a)). "IRPA defines 'commercial purpose' disjunctively as 'the public use or holding out of an individual's identity (i) on or in connection with the offering for sale or sale of a product, merchandise, goods, or services; (ii) for purposes of advertising or promoting products,

merchandise, goods, or services; or (iii) for the purpose of fundraising.'" *Huston*, 53 F.4th at 1100 (citing 765 ILCS § 1075/5). "Identity" is defined as "any attribute of an individual that serves to identify that individual to an ordinary, reasonable viewer or listener, including but not limited to (i) name, (ii) signature, (iii) photograph, (iv) image, (v) likeness, or (vi) voice." 765 ILCS § 1075/5.

The Seventh Circuit succinctly describes the most relevant aspect of IRPA to the instant case: "[T]he statute contemplates a use or holding out of an individual's identity with the aim of effectuating a sale." *Huston*, 53 F.4th at 1101. Plaintiffs here allege that users of Defendant's Tea App were able to see Plaintiffs' and other class members' identities in order to get prospective subscribers to buy in on Defendant's premium services.

Defendant's contrary framing ignores the specific allegations in the Complaint. Defendant argues that Plaintiffs do not allege Tea App used their specific identities in advertising or promotional materials and that Plaintiffs challenge only the existence of a free forum with optional paid upgrades. (Dkt. 28 at 1–2, 4–6.) But the Complaint alleges more than that. It alleges that Tea shows men's profiles and photos to free users, encourages those users to upgrade to paid premium services to obtain additional information about those profiles, and publicly displays the names, photos, and profiles of men in its database – including the Non-User Plaintiffs – to advertise and promote paid services such as reverse image searching, background checks, and criminal-record and court-document searches. (Compl., ¶¶ 56–58.) It further alleges that Plaintiffs Diaz, Sullivan, and Hatfield each had their name and photo publicly displayed to free users and used to "advertise, promote, and entice" those users to purchase Tea's paid premium service. (*Id*. at ¶¶ 60–62.) At this stage, those allegations must be accepted as true, and Defendant cannot obtain dismissal by substituting its own narrower characterization of the claim.

Defendant's reliance on *D'Ambrosio* is misplaced. In *D'Ambrosio*, the plaintiff alleged that

a third-party Facebook post about him generated user engagement and advertising revenue for Meta and that the operators of the Facebook group financially benefited from the group's popularity. *D'Ambrosio v. Rajala*, 783 F. Supp. 3d 1077, 1087–88 (N.D. Ill. May 13, 2025) (*D'Ambrosio I*), *aff'd sub nom. D'Ambrosio v. Meta Platforms Inc.*, No. 25-2231, 176 F.4th 928 (7th Cir. May 15, 2026) (*D'Ambrosio II*). The Seventh Circuit affirmed dismissal because the plaintiff had alleged only a "free-floating profit motive," not that the defendants used his identity to sell or advertise a product or service. *D'Ambrosio II*, 176 F.4th at 936. The Court explained that a platform does not act with a commercial purpose merely because unrelated advertisements appear on the same page as user-generated content. *Id*.

That is not what Plaintiffs have alleged here. Plaintiffs do not allege that Defendant merely earned revenue from advertisements displayed alongside user posts about them. Nor do Plaintiffs allege that the mere presence of their identities somewhere on a revenue-generating platform is enough to trigger IRPA. Rather, Plaintiffs allege that Defendant used their identities specifically as free-preview content to sell paid premium services. The Complaint expressly alleges that free users are shown men's profiles and photos and encouraged to upgrade to paid premium services to obtain additional information *about those profiles*, and that Defendant publicly displays the names, photos, and profiles of men in its database to advertise and promote paid services such as reverse image searching, background checks, and criminal-record and court-document searches. (Compl., ¶¶ 56–58.) The Complaint further alleges that Plaintiffs Diaz, Sullivan, and Hatfield each had their name and photo publicly displayed to free users and used to "advertise, promote, and entice" those users to purchase Defendant's paid premium service. (*Id.* ¶¶ 60–62.)

That distinction matters under the statutory text. IRPA defines "commercial purpose" to include "the public use or holding out of an individual's identity . . . on or in connection with the

offering for sale or sale of . . . services . . . for purposes of advertising or promoting . . . services." 765 ILCS § 1075/5. *D'Ambrosio* rejected an incidental-revenue theory; it did not authorize a company to use a person's name, photograph, image, or likeness as free-preview content to induce purchases of paid services. Indeed, the Seventh Circuit's reasoning confirms Plaintiffs' position, as Plaintiffs allege the missing link that *D'Ambrosio* lacked—that their identities were allegedly used with "the aim of effectuating a sale." *Huston*, 53 F.4th at 1101.

This case instead tracks the free-preview cases holding that use of a person's identity to advertise, promote, or sell paid subscription services states an IRPA claim. *See Lukis I*, 454 F. Supp. 3d at 760; *Bonilla*, 574 F. Supp. 3d at 594–95; *Krause*, 561 F. Supp. 3d at 782–83; *Siegel*, 2021 WL 4306148 at *2–3 ("The free previews are part of [defendant]'s efforts to sell its product. Like *Lukis*, the product is [defendant]'s database, and [p]laintiff's identity is being used to sell that product"); *Green*, 2024 WL 168123 at *2–3; *Gaul*, 2022 WL 3647257 at *7. Defendant may dispute those allegations, but it cannot obtain dismissal by recasting a "free-preview" theory as the "incidental advertising" theory rejected in *D'Ambrosio*.

Further, while Defendant attempts to characterize its conduct as operating a "free forum" which also just happens to offer optional premium services, the app is only free in the sense that users can upload posts containing non-users' identities for free and conduct a limited number of searches of other posts. In fact, free users cannot access most functions of Defendant's Tea App without paying for a subscription.[1] This is a free preview, and offering free previews using individual's identities without consent is prohibited under IRPA. *See e.g., Lukis I,* 454 F. Supp. 3d

[1] For example, only subscribers "have the ability to boost their own posts and filter community content by specific locations," "can perform social media profile lookups and phone number lookups directly within the app," and "receive unlimited access to post searches, background checks, and criminal record searches." https://teaforwomen.freshdesk.com/support/solutions/articles/158000421008-subscription-management-and-features (last accessed May 28, 2026).

at 760; *Bonilla*, 574 F. Supp. 3d at 594; *Gaul*, 2022 WL 3647257 at *7.

Defendant next argues that Plaintiffs cannot state an IRPA claim because "it is not unlawful merely to sell a product where the product itself consists of information about people." (Dkt. 28 at 6.) That argument misses Plaintiffs' theory. Plaintiffs do not allege that Tea violated IRPA merely by selling access to posts about Plaintiffs, or merely because Plaintiffs' identities appeared somewhere on a platform that generates revenue. Plaintiffs allege that Defendant used their names, photographs, images, and likenesses as free-preview content to induce users to purchase paid premium services. (Compl., ¶¶ 56–58, 60–62.)

*Huston* also does not support dismissal. There, the Seventh Circuit held that the sale of mailing lists containing the plaintiff's name and contact information did not establish commercial use because the plaintiff did not allege that her identity was publicly held out "with the aim of effectuating a sale." *Huston*, 53 F.4th at 1101. Here, Plaintiffs allege exactly that missing link: Defendant publicly displayed their names and photos to free users and used those identities to "advertise, promote, and entice" users to purchase paid premium services. (Compl., ¶¶ 60–62.) *Huston* therefore supports Plaintiffs' position because it confirms that the relevant question is whether the identity was used in connection with effectuating a sale, which is precisely what the Complaint alleges.

Nor do *Dobrowolski* and *Thompson* control. Those cases involved materially different allegations: in *Dobrowolski*, the previews were alleged to promote reports about the same individuals whose identities appeared in the previews; and in *Thompson*, the defendant sold the photographs themselves rather than using the plaintiff's photograph to sell some different product or service. *See Dobrowolski v. Intelius, Inc.*, 2018 WL 11185289, at *3 (N.D. Ill. May 21, 2018); *Thompson v. Getty Images (US), Inc.*, 2013 WL 3321612, at *2–4 (N.D. Ill. July 1, 2013).

Plaintiffs' allegations are different. The Complaint alleges that Tea's paid premium offering includes services and functionality beyond the displayed free posts themselves, including reverse image searching, a background-check tool, criminal-record and court-document searches, and other premium research features. (Complaint, ¶¶ 46, 54, 58.) Thus, even under Defendant's preferred "separate product" framing, Plaintiffs allege that their identities were used to promote paid services beyond the mere display of the free profiles or photos.

Defendant's premium subscription service also offers more than the posts containing Plaintiffs' identities themselves—including unlimited searches of other posts, additional app functionality such as post boosting, and background-check tools offering information beyond what appears in any free post.[2] That distinction is what separates this case from *Dobrowolski* and *Thompson*.

Thus, Plaintiffs have sufficiently alleged an IRPA claim.

**B. Section 230 Does Not Bar Plaintiffs' IRPA Claim at the Pleading Stage.**

Defendant's Section 230 argument fails at the pleading stage. The CDA provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). That provision protects interactive computer services from claims that seek to impose liability on them as the publisher or speaker of third-party content. *See Chi. Lawyers' Comm. for Civ. Rights Under Law, Inc. v. Craigslist, Inc.*, 519 F.3d 666, 671–72 (7th Cir. 2008). But Section 230 does not bar claims based on a defendant's *own* conduct, including its own commercial use of information or its own development of the allegedly unlawful use. *See* 47 U.S.C. § 230(f)(3).

That distinction defeats Defendant's Section 230 argument. Plaintiffs do not seek to hold

[2] See *supra* note 1.

Defendant liable merely because third-party users posted information about them. Plaintiffs seek to hold Defendant liable because *Defendant* used Plaintiffs' identities for its *own* commercial purpose: to advertise, promote, and sell paid premium services. The Complaint alleges that Defendant uses the photos of men posted on the Tea App to advertise and promote its paid premium services; that free users are shown men's profiles and photos and encouraged to upgrade to paid premium services to obtain additional information about those profiles; and that Defendant publicly displays the names, photos, and profiles of men in its database, including the Non-User Plaintiffs, to advertise and promote paid services such as reverse image searching, background checks, and criminal-record and court-document searches. (Compl., ¶¶ 56–58.) The Complaint further alleges that each Non-User Plaintiff's name and photo was publicly displayed to free users and used to "advertise, promote, and entice" those users to purchase Tea's paid premium service. (*Id.* ¶¶ 60–62.)

Section 230 does not immunize that alleged conduct because Plaintiffs' claim does not depend on treating Tea as the "publisher or speaker" of third-party posts. It depends on Tea's own alleged decision to use Plaintiffs' identities as free-preview content in connection with the sale of paid premium services. Defendant may dispute that characterization factually, but at this stage the Court must accept the Complaint's allegations and draw reasonable inferences in Plaintiffs' favor. *See Huston*, 53 F.4th at 1099.

Nor can Defendant establish Section 230 immunity from the face of the pleadings. Section 230 immunity is an affirmative defense, and "dismissal is appropriate only when the . . . complaint unambiguously establish[es] every element[] of the defense." *See Bonilla*, 574 F. Supp. 3d at 592; *Krause*, 561 F. Supp. 3d at 785. The Complaint does not do so here. To the contrary, Plaintiffs allege that Defendant itself advertised premium reverse-image-search functionality, charged users

for that functionality, and used Plaintiffs' names, photographs, images, and likenesses to promote paid services. (Compl., ¶¶ 46, 54, 56–58, 60–63.) Those allegations preclude dismissal based on Section 230.[3]

Two additional, independent reasons confirm that Section 230 does not warrant dismissal. First, Defendant claims to act as a passive conduit for third-party content posted by its users (Dkt. 28 at 8), but this is inconsistent with Plaintiffs' allegations that Defendant specifically "encouraged" and "posted" content and thus acted as a "content provider" not under the CDA's protection. (Compl., ¶¶ 45, 102.) And the full extent of Defendant's participation in creating, inducing, or developing the free preview content remains an issue for discovery. Second, Defendant is responsible in part for the development of the promotional materials containing the Plaintiffs' identities and is itself a "content provider." A company can be liable "for creating and posting, inducing another to post, or otherwise actively participating in ... a forum that that company maintains." *Huon v. Denton*, 841 F.3d 733, 742 (7th Cir. 2016) (district court erred by dismissing a complaint that alleged defendant induced and created content). The Seventh Circuit reached its decision in *Huon* by comparing to *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1166–67 (9th Cir. 2008), and *FTC v. Accusearch Inc.*, 570 F.3d 1187, 1199–1200 (10th Cir. 2009). Like the defendants in those cases, Defendant goes beyond merely hosting user content; the Complaint alleges that Defendant specifically "encouraged" users to post information and photos about the men they had dated (Compl., ¶ 45), and that Defendant *itself* – not its users – "publicly displays the names, photos, and profiles of all the men within its

[3] Defendant's reliance on *Callahan v. Ancestry.com Inc.*, 2021 WL 783524 (N.D. Cal. Mar. 1, 2021), holds little argumentative value. A court in *this* District considered near identical facts in *Bonilla v. Ancestry.com Operations Inc.* and concluded that defendant's purported republishing of records was inconsistent with the plaintiff's "allegations that Ancestry uses those records and the likeness/identity to sell subscription services beyond his individual yearbook record" and denied CDA immunity. 574 F. Supp. 3d at 592.

database... to advertise and promote Defendant's premium services." (Compl., ¶ 58.) Those are allegations of Defendant's own participation in developing and deploying the promotional display, not passive hosting.

### C. Defendant's First Amendment Defense Cannot Be Resolved on the Pleadings and Fails in Any Event.

Defendant's First Amendment argument does not warrant dismissal and is premature. This Court has repeatedly rejected First Amendment defenses against IRPA claims at the pleading stage. *See e.g., Siegel*, 2021 WL 4306148 at *4 ("this defense requires an analysis of evidence and issues that is not possible or appropriate at the motion to dismiss stage"); *Green*, 2024 WL 168123 at *4 (same); *Lukis I*, 454 F. Supp. 3d at 763 (rejecting First Amendment defense due to lack of evidence in the record).

Moreover, Defendant's First Amendment argument fails even if the Court chooses to consider it at this stage of the case. Defendant argues that it is immune from suit under the First Amendment by making the somewhat unbelievable claim that, through IRPA, Plaintiffs seek to prohibit "Tea Dating from marketing its premium services in any forum where someone's identifying information appears without the consent of every such person." (Dkt. No. 28 at 10.) That is not Plaintiffs' position. Plaintiffs assert that Defendant's nonconsensual use of Plaintiffs' identities in free previews to entice subscriptions is prohibited by IRPA. Such a prohibition does not come into conflict with the First Amendment.

To start, strict scrutiny is not the applicable standard. Defendant uses free previews non-users' profiles within a limited number of searches for the sole purpose of enticing website users to subscribe to its additional premium services, which is clearly "speech that proposes a commercial transaction." *Board of Trustees of State University of New York v. Fox*, 492 U.S. 469, 482 (1989). The Seventh Circuit has listed relevant considerations, such as "whether: (1) the

speech is an advertisement; (2) the speech refers to a specific product; and (3) the speaker has an economic motivation for the speech." *U.S. v. Benson*, 561 F.3d 718, 725 (7th Cir. 2009). Here, Defendant's app specifically solicits the purchase of a subscription to its premium services (e.g., post visibility boosting, sex offender registry searches, reverse image searching) through advertisements that incorporate previews of Plaintiffs' identities for its own financial gain. This conduct meets all three factors from *Benson*.

The commercial nature of Defendant's free preview content does not afford such speech First Amendment protection, and any analysis should proceed under the intermediate scrutiny test from *Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557, 563 (1980). Under that test, IRPA's regulation of Defendant's commercial speech is lawful. The asserted government interest in regulating Defendant's speech is substantial in that it involves a civil right recognized by the Illinois legislature. 765 ILCS 1075/10. Additionally, IRPA directly advances the government's interests by prohibiting unauthorized entities from profiteering off of individuals' identities without consent. It is not more extensive than necessary and already incorporates First Amendment protections in the form of exemptions. 765 ILCS § 1075/35(b)(1)-(4).

For these reasons the First Amendment does not conflict with IRPA's regulation of Defendant's commercial speech.

### D. Any Dismissal should be Granted Without Prejudice with Leave to Amend.

Leave to amend a complaint should "be freely given when justice so requires." Fed. R. Civ. P. 15(a)(2). "In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the

amendment, futility of amendment, etc. – the leave sought should, as the rules require, be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962). If the Court chooses to dismiss the IRPA claims from the Consolidated Class Action Complaint, Plaintiffs request leave to amend. This case is still in the early stages, no discovery has occurred, and no substantial costs or undue prejudice would be imposed by permitting further amendment.

"Unless it is certain from the face of the complaint that any amendment would be futile or otherwise unwarranted, the district court should grant leave to amend after granting a motion to dismiss." *Barry Aviation Inc. v. Land O'Lakes Mun. Airport Commn.*, 377 F.3d 682, 687 (7th Cir. 2004) (citations omitted). Defendant has not satisfied its burden of demonstrating futility, and as such, dismissal with prejudice is especially unwarranted.

## V. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendant's Motion to Dismiss in its entirety. Alternatively, if the Motion is granted in any respect, Plaintiffs request leave to file an amended complaint.

DATED: July 6, 2026

Respectfully submitted,

SMONE HONEYCUTT, JERESA WHITE, SHANTEL SAGO, JASMINE VALDEZ, RODNEKA PERRY, ERIC DIAZ, MARK SULLIVAN, and CRAIG HATFIELD, individually and on behalf of similarly situated individuals

By: /s/ *Jordan R. Frysinger*
One of Plaintiffs' Attorneys

Eugene Y. Turin
Jordan R. Frysinger
Ethan D. Coniglio
McGuire Law, P.C. (Firm ID 56618)
55 W. Wacker Drive, 9th Floor

Chicago, IL 60601
Tel: (312) 893-7002
eturin@mcgpc.com
jfrysinger@mcgpc.com
econiglio@mcgpc.com

Jay Kumar
Jay Kumar Law (Attorney No. 60100)
211 W. Wacker Dr, Suite 200B
Chicago, IL 60606
Tel: (312) 767-7903
Jay@jaykumarlaw.com

Ryan F. Stephan
James B. Zouras
Catherine Mitchell Duffy
STEPHAN ZOURAS, LLC
222 W. Adams Street, Suite 2020
Chicago, Illinois 60606
312.233.1550
312.233.1560
rstephan@stephanzouras.com
jzouras@stephanzouras.com
cmitchell@stephanzouras.com
Firm ID: 43734

*Attorneys for Plaintiffs and the Putative Class*