**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| SMONE HONEYCUTT, JERESA WHITE, SHANTEL SAGO, JASMINE VALDEZ, RODNEKA PERRY, ERIC DIAZ, MARK SULLIVAN, and CRAIG HATFIELD, individually and on behalf of similarly situated individuals,<br><br>*Plaintiffs,*<br>v.<br><br>TEA DATING ADVICE, INC., a Delaware corporation,<br><br>*Defendant.* | ) | Case No. 1:25-cv-10885<br><br>Hon. Martha Pacold<br><br>Consolidated with:<br>1:25-cv-10895<br>1:25-cv-12045<br>1:25-cv-12050<br><br>**JURY TRIAL DEMANDED** |

**CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**

Plaintiffs Smone Honeycutt, Jeresa White, Shantel Sago, Jasmine Valdez, Rodneka Perry, Eric Diaz, Mark Sullivan, and Craig Hatfield (collectively "Plaintiffs"), individually and on behalf of other similarly situated individuals, bring this Consolidated Amended Class Action Complaint against Defendant Tea Dating Advice, Inc. ("Defendant" or "Tea") for violations of the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.* ("BIPA"), violations of the Illinois Right of Publicity Act, 765 ILCS 1075/1 *et seq.* ("IRPA"), and to obtain redress for all persons injured by Defendant's conduct. Plaintiffs allege as follows based on personal knowledge as to their own acts and experiences, and as to all other matters, upon information and belief, including an investigation conducted by their attorneys.

**INTRODUCTION**

1. Plaintiffs Smone Honeycutt, Jeresa White, Shantel Sago, Jasmine Valdez, Rodneka Perry (hereinafter the female "User Plaintiffs") seek to represent a class of individuals

who had their unique facial biometrics unlawfully collected, retained, disclosed and used without their consent or authorization by Defendant when they interacted with the identity verification process as part of registration for Defendant's mobile application (the "Tea App.").

2. Plaintiffs Eric Diaz, Mark Sullivan, and Craig Hatfield (hereinafter the male "Non-User Plaintiffs") seek to represent a class of individuals who had their unique facial biometrics unlawfully collected, retained and used without their consent or authorization by Defendant when they were posted on Defendant's "Tea App." without their consent or permission.

3. The Non-User Plaintiffs also seek to represent a class of individuals whose images were posted on Defendant's Tea App. without consent and who had their name, images, and personally identifying information used to advertise Defendant's paid services.

4. On behalf of themselves and the proposed User and Non-User Classes defined below, Plaintiffs seek an injunction requiring Defendant to comply with BIPA and IRPA, as well as an award of statutory damages to the User and Non-User Classes, together with costs and reasonable attorneys' fees.

## PARTIES

4. At all relevant times, Plaintiff Smone Honeycutt has been a citizen of Illinois and resident of Will County.

5. At all relevant times, Plaintiff Jeresa White has been a citizen of Illinois and resident of Cook County.

6. At all relevant times, Plaintiff Shantel Sago has been a citizen of Illinois and resident of Will County.

7. At all relevant times, Plaintiff Jasmine Valdez has been a citizen of Illinois and a resident of Cook County.

8. At all relevant times, Plaintiff Rodneka Perry has been a resident of Illinois.

9. At all relevant times, Plaintiff Eric Diaz has been a citizen of Illinois and a resident of Will County.

10. At all relevant times, Plaintiff Mark Sullivan has been a citizen of Illinois and resident of Peoria County.

11. At all relevant times, Plaintiff Craig Hatfield has been a citizen of Illinois and resident of Cook County.

12. Defendant Tea Dating Advice, Inc. is a Delaware corporation that conducts business throughout Illinois, including in Cook County, Illinois.

## JURISDICTION AND VENUE

13. This Court has subject matter jurisdiction over this case and the claims at issue pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because this case is a class action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs; there are greater than 100 putative class members; on information and belief, at least one putative class member is a citizen of a state other than the Defendant's states of citizenship; and none of the exceptions under subsection 1332(d) apply to this action.

14. Venue is proper in this District under 28 U.S.C. §1391 because Defendant conducts business within this state and because Plaintiffs' and the putative class members' claims arise out of Defendant's unlawful in-state actions, as Defendant captured, collected, stored, and used Plaintiffs' biometric identifiers and/or biometric information in this state.

15. Venue is also proper under 28 U.S.C. § 1446(a) because the State Court Action from which this case was removed was pending within the jurisdictional confines of this Court.

## THE BIOMETRIC INFORMATION PRIVACY ACT

16. "Biometrics" refers to a "biology-based set[s] of measurements." *Rivera v. Google Inc.*, 238 F. Supp. 3d 1088, 1094 (N.D. Ill. 2017). Specifically, "biometrics" are "a set of measurements of a specified physical component (eye, finger, voice, hand, face)." *Id.* at 1296.

17. BIPA was enacted in 2008 in order to safeguard individuals' biometrics as the result of the "very serious need [for] protections for the citizens of Illinois when it [comes to their] biometric information." Illinois House Transcript, 2008 Reg. Sess. No. 276. BIPA is codified as Act 14 in Chapter 740 of the Illinois Compiled Statutes.

18. As set forth in BIPA, biologically unique identifiers, such as a person's unique facial geometry, cannot be changed. 740 ILCS 14/5(c). The inalterable nature of biologically unique identifiers presents a heightened risk when an individual's biometrics are not protected in a secure and transparent fashion. 740 ILCS 14/5(d)–(g).

19. As a result of the need for enhanced protection of biometrics, BIPA imposes various requirements on private entities that collect or maintain individuals' biometrics, including those obtained through facial scans.

20. Among other things, BIPA seeks to regulate "the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information." 740 ILCS 14/5(g). BIPA thus applies to entities that interact with two forms of biometric data: biometric "identifiers" and biometric "information." 740 ILCS 14/15(a)-(e).

21. BIPA defines a "biometric identifier" as any personal feature that is unique to an individual, including fingerprints, voiceprints, palm scans and facial geometry. "Biometric identifiers" are physiological, as opposed to behavioral, characteristics. BIPA's text provides a non-exclusive list of protected "biometric identifiers," including "a retina or iris scan, fingerprint,

voiceprint, or scan of hand or face geometry." 740 ILCS 14/10.

22. "Biometric information" is defined by BIPA as "any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual." *Id*. This definition helps ensure that information based on a biometric identifier that can be used to identify a person is covered by BIPA. Collectively, biometric identifiers and biometric information are known as "biometrics."

23. In BIPA, the Illinois General Assembly identified five distinct activities that may subject private entities to liability:

a. possessing biometrics without a proper publicly-available policy, 740 ILCS 14/15(a);

b. collecting, capturing, purchasing, receiving, or obtaining biometrics without prior written consent, 740 ILCS 14/15(b);

c. selling, leasing, trading, or otherwise profiting from biometrics without prior written consent, 740 ILCS 14/15(c);

d. disclosing or disseminating biometrics without prior written consent, 740 ILCS 14/15(d); and

e. failing to secure biometric data using a reasonable standard of care, 740 ILCS 14/15(e).

24. As the Illinois Supreme Court has held, BIPA "codified that individuals possess a right to privacy in and control over their biometric identifiers and biometric information." *Rosenbach v. Six Flags Entm't Corp*., 2019 IL 123186, ¶ 33, 129 N.E.3d 1197, 1206 (Ill. 2019). The Illinois Supreme Court further held that when a private entity fails to comply with BIPA "that violation constitutes an invasion, impairment, or denial of the statutory rights of any person or customer whose biometric identifier or biometric information is subject to the breach." *Id.*

## THE ILLINOIS RIGHT OF PUBLICITY ACT

25. Recognizing the right of an individual to control the use of their identity for a

commercial purpose, in 1999 the Illinois legislature passed the Illinois Right of Publicity Act. 765 ILCS 1075/10.

26. IRPA defines identity as any attribute that identifies an individual to an ordinary and reasonable viewer. 765 ILCS 1075/5. This includes the individual's "name, signature, photograph, image, likeness, or voice." 765 ILCS 1075/5.

27. IRPA defines a commercial purpose as: "the public use or holding out of an individual's identity on or in connection with the offering for sale or sale of a product, merchandise, goods, or services; for purposes of advertising or promoting products, merchandise, goods, or services; or for the purpose of fundraising. 765 ILCS 1075/5.

28. IRPA forbids the use of a person's identity during their lifetime without "previous written consent." 765 ILCS 1075/30.

29. IRPA provides a private right of action and statutory damages of the greater of $1,000 or actual damages for violations and punitive damages for willful violations. 765 ILCS 1075/20; 765 ILCS 1075/40.

30. A person's identity made available as part of a free version or preview which is offered in connection with and serves as an advertisement for a paid service constitutes use of a person's identity for a commercial purpose under IRPA. *Lukis v. Whitepages Inc.*, 454 F. Supp. 3d 746, 760 (N.D. Ill. 2020).

## FACTUAL BACKGROUND

31. Defendant is the owner and operator of the viral mobile phone dating application "Tea" (the "Tea App.").

### A. Defendant's Violations of User's Biometric Privacy Rights

32. During the relevant period, Defendant claims to have had over 6.5 million users

register for its Tea App., including thousands, if not hundreds of thousands, of users residing within the state of Illinois.[1]

33. In order to verify the gender and identity of potential users of the Tea App., Defendant collected, stored, possessed, and analyzed potential users' facial geometry. Specifically, the Tea App. required potential users to upload a "selfie" picture of their face. Some users were also required to upload photos of their Illinois Driver's License. These photos were then used to biometrically analyze potential users' facial geometry to verify their gender and identity before granting them access to Defendant's services.

34. In or about July of 2025, Plaintiff Smone Honeycutt registered as a user of the Tea App. During the registration process, Plaintiff Honeycutt was required to upload a "selfie" picture of her face so that Defendant could biometrically analyze her facial geometry to verify her gender.

35. In or about July 2025, Plaintiff Jeresa White registered as a user of the Tea App. During the registration process, Plaintiff was required to upload a "selfie" picture of her face as well as a photo of her Illinois Driver's License so that Defendant could biometrically analyze her facial geometry to verify her identity and gender.

36. In or about July of 2025, Plaintiff Shantel Sago registered as a user of the Tea App. During the registration process, Plaintiff Sago was required to upload a "selfie" picture of her face so that Defendant could biometrically analyze her facial geometry to verify her gender.

37. In or about May of 2024, Plaintiff Jasmine Valdez registered as a user of the Tea App. During the registration process, Plaintiff Valdez was required to upload a "selfie" picture of her face as well as a photo of her Illinois Driver's License so that Defendant could biometrically analyze her facial geometry to verify her identity and gender.

---

[1] https://www.teaforwomen.com/about (last accessed March 15, 2026).

38. In or about July of 2025, Plaintiff Rodneka Perry registered as a user of the Tea App. During the registration process, Plaintiff Perry was required to upload a "selfie" picture of her face as well as a photo of her Illinois Driver's License so that Defendant could biometrically analyze her facial geometry to verify her identity and gender.

39. Thus, each time the female User Plaintiffs were required to upload a "selfie" or picture of their Illinois Driver's License to verify their gender or identity, Defendant collected, captured, possessed, and stored their biometrics in the form of facial geometry.

40. However, even though Defendant collected, captured, possessed, and stored the female User Plaintiffs' and User Class members' facial biometrics, Defendant failed to obtain proper written consent to collect such biometrics, as required by BIPA.

41. On information and belief, Defendant has used third-party biometric services to verify the gender and identity of individuals registering for its Tea App. Thus, by using a third-party vendor to biometrically analyze the female User Plaintiffs' facial biometrics, Defendant also unlawfully disclosed Plaintiffs' and other User Class members' facial biometric data to third-party biometric vendors and data storage vendors without Plaintiffs' and User Class members' consent.

42. By failing to comply with BIPA, Defendant has violated the female User Plaintiffs' substantive state rights to biometric privacy.

**B. Defendant's Violations of Non-User's Biometric Privacy Rights**

43. Defendant's Tea App. subscribers are comprised of women who are encouraged to post information and feedback about men they have dated, including posting photos of them.

44. As part of its services, Defendant advertises its ability to use reverse image search technology to compare the photos of men provided by users through the Tea App. with other photos previously found on the Tea App. or on the internet. Such reverse image searching is

accomplished by collecting and analyzing the facial geometry of men whose photos are provided by users through the Tea App. and biometrically comparing them with other photos provided by other users of the Tea App. and on the internet. Thus, each time a photo of a man is posted by a user on the Tea App., Defendant collects, stores, possesses and analyzes the facial geometry of the person featured in the photo without their consent.

45. Defendant claims to have over 6.5 million registered users on its Tea App. including many of whom reside within the state of Illinois.[2] Therefore, thousands, if not tens of thousands, of men within the state of Illinois had their photos posted on the Tea App. by its users and thus had their biometrics collected and captured by Defendant without their consent.

46. In or about July 2025, Plaintiff Eric Diaz had his photo posted on the Tea App. and his facial geometry collected, analyzed, and biometrically compared to other photos without his consent.

47. In or about July of 2025, Plaintiff Mark Sullivan had his photo posted on the Tea App. and his facial geometry collected, analyzed, and biometrically compared to other photos without his consent.

48. In or about July of 2025, Plaintiff Craig Hatfield had his photo posted on the Tea App. and his facial geometry collected, analyzed, and biometrically compared to other photos without his consent.

49. However, even though Defendant collected, captured, analyzed and stored the male Non-User Plaintiffs' and Non-User Class members' facial biometrics, Defendant failed to obtain proper written consent to collect such biometrics, as required by BIPA.

50. On information and belief, Defendant uses third-party biometric services to enable

[2] https://www.teaforwomen.com/about (last accessed March 15, 2026).

the biometrically-enabled reverse image search on its Tea App. Thus, by using a third-party vendor to biometrically analyze the male Non-User Plaintiffs' facial biometrics, Defendant unlawfully disclosed the male Non-User Plaintiffs' and other Non-User Class members' facial biometric data to third-party biometric vendors and data storage vendors without the male Non-User Plaintiffs' and Non-User Class members' consent.

51. By failing to comply with BIPA, Defendant has violated the male Non-User Plaintiffs' substantive state rights to biometric privacy.

**C. Defendant's IRPA Violations**

52. Defendant also uses the photos of men posted on its Tea App by its users to advertise and promote its paid premium services without their consent.

53. Specifically, users of the free version of the Tea App. are shown profiles and photos of men and encouraged to upgrade their services to Defendant's premium version to obtain additional information about the profiles users are seeing.

54. For example, Defendant charges a fee to its users to perform the reverse image search function of men on its platform as part of its services.

55. Thus, Defendant publicly displays the names, photos, and profiles of all the men within its database, including the male Non-User Plaintiffs, to users of the Tea App.[3] to advertise and promote Defendant's premium services which includes reverse image searching, a

[3]https://www.tiktok.com/@theteapartygirls/video/7413961902533004590?embed_source=121374463%2C121468991%2C121439635%2C121749182%2C121433650%2C121404359%2C121497414%2C121477481%2C121351166%2C121772354%2C121487028%2C121679410%2C121331973%2C120811592%2C120810756%2C121819198%3Bnull%3Bembed_name&refer=embed&referer_url=www.dazeddigital.com%2Flife-culture%2Farticle%2F68302%2F1%2Ftea-the-new-app-where-women-anonymously-review-men%3Futm_source%3Dflipboard&referer_video_id=7413961902533004590 (last accessed August 4, 2025).

background check tool, and criminal record and court document searches.[4]

56. Defendant's paid services range from $9.99 to $19.99 monthly.[5]

57. In or about July 2025, Plaintiff Eric Diaz had his name and photo publicly displayed to free users of Defendant's Tea App. His name and photo were then used to advertise, promote, and entice free users to purchase Defendant's paid premium service in order to obtain more information about him and other men who were posted on the Tea App. Defendant never received permission or consent from Plaintiff Eric Diaz to use his name, image, and likeness to advertise or promote Defendant's service.

58. In or about July 2025, Plaintiff Mark Sullivan had his name and photo publicly displayed to free users of Defendant's Tea App. His name and photo were then used to advertise, promote, and entice free users to purchase Defendant's paid premium service in order to obtain more information about him and other men who were posted on the Tea App. Defendant never received permission or consent from Plaintiff Mark Sullivan to use his name, image, and likeness to advertise or promote Defendant's service.

59. In or about July 2025, Plaintiff Craig Hatfield had his name and photo publicly displayed to free users of Defendant's Tea App. His name and photo were then used to advertise, promote, and entice free users to purchase Defendant's paid premium service in order to obtain more information about him and other men who were posted on the Tea App. Defendant never received permission or consent from Plaintiff Craig Hatfield to use his name, image, and likeness to advertise or promote Defendant's service

60. Despite using the male Non-User Plaintiffs' and Non-User Class Members' names,

---

[4] https://www.fastcompany.com/91374409/everything-to-know-about-tea-the-viral-and-controversial-app-that-lets-women-mark-men-as-red-flags.

[5] https://apps.apple.com/us/app/tea-dating-advice/id6444453051 (last accessed August 1, 2025).

photographs images, and likenesses for a commercial purpose to advertise and promote their paid premium service, Defendant never requested or received consent or permission from the male Non-User Plaintiffs or Non-User Class Members, nor did they receive compensation for the use of their identity for a commercial purpose.

## CLASS ALLEGATIONS

### A. The User Class

61. The female User Plaintiffs bring this action on behalf of themselves and a class of similarly situated individuals pursuant to Fed. R. Civ. P. 23. The female User Plaintiffs seek to represent a User Class defined as follows:

> **User Class**: All individual users of the Tea App. whose facial biometric identifiers or biometric information were collected, captured, stored, possessed, disseminated, or otherwise used by Defendant within the state of Illinois any time within the applicable limitations period.

62. Excluded from the User Class are any members of the judiciary assigned to preside over this matter; any officer or director of Defendant; and any immediate family member of such officer or director.

63. There are thousands of members of the User Class, making the members of the User Class so numerous that joinder of all members is impracticable. Although the exact number of members of the User Class is currently unknown to the female User Plaintiffs, the members can be identified through Defendant's records.

64. The female User Plaintiffs' claims are typical of the claims of the User Class they seek to represent, because the basis of Defendant's liability to the female User Plaintiffs and the User Class is substantially the same, and because Defendant's conduct has resulted in similar injuries to the female User Plaintiffs and to the User Class.

65. There are many questions of law and fact common to the claims of the female User

Plaintiffs and the User Class, and those questions predominate over any questions that may affect individual members of the User Class. Common questions for the User Class include, but are not limited to, the following:

a. Whether Defendant collects, captures, or otherwise obtains facial biometric identifiers or biometric information from Illinois residents;

b. Whether Defendant obtained valid written consent from the User Class members before capturing, collecting, or otherwise obtaining their facial biometric identifiers or biometric information;

c. Whether Defendant's conduct violates BIPA;

d. Whether Defendant's BIPA violations are willful or reckless; and

e. Whether the User Class is entitled to damages and injunctive relief.

66. Absent a class action, most members of the User Class would find the cost of litigating their claims to be prohibitively expensive and would thus have no effective remedy. The class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants and promotes consistency and efficiency of adjudication.

67. The female User Plaintiffs will fairly and adequately represent and protect the interests of the other members of the User Class they seek to represent. The female User Plaintiffs have retained counsel with substantial experience in prosecuting complex litigation and class actions, and BIPA class actions in particular. The female User Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the other members of the User Class and have the financial resources to do so. Neither the female User Plaintiffs nor their counsel have any interest adverse to those of the other members of the User Class.

68. Defendant has acted and failed to act on grounds generally applicable to the female

User Plaintiffs and the other members of the User Class, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the User Class and making injunctive or corresponding declaratory relief appropriate for the User Class as a whole.

**B. The Non-User Class**

69. The male Non-User Plaintiffs bring this action on behalf of themselves and a class of similarly situated individuals pursuant to Fed. R. Civ. P. 23. The male Non-User Plaintiffs seek to represent a Non-User Class defined as follows:

> **Non-User Class**: All individual non-users of the Tea App. whose facial biometric identifiers or biometric information were collected, captured, stored, possessed, disseminated, or otherwise used by Defendant within the state of Illinois any time within the applicable limitations period.

70. Excluded from the Non-User Class are any members of the judiciary assigned to preside over this matter; any officer or director of Defendant; and any immediate family member of such officer or director.

71. There are thousands of members of the Non-User Class, making the members of the Non-User Class so numerous that joinder of all members is impracticable. Although the exact number of members of the Non-User Class is currently unknown to the male Non-User Plaintiffs, the members can be identified through Defendant's records.

72. The male Non-User Plaintiffs' claims are typical of the claims of the Non-User Class they seek to represent, because the basis of Defendant's liability to the male Non-User Plaintiffs and the Non-User Class is substantially the same, and because Defendant's conduct has resulted in similar injuries to the male Non-User Plaintiffs and to the Non-User Class.

73. There are many questions of law and fact common to the claims of the male Non-User Plaintiffs and the Non-User Class, and those questions predominate over any questions that

may affect individual members of the Non-User Class. Common questions for the Non-User Class include, but are not limited to, the following:

a. Whether Defendant collects, captures, or otherwise obtains facial biometric identifiers or biometric information from Illinois residents;

b. Whether Defendant obtained valid written consent from the Non-User Class members before capturing, collecting, or otherwise obtaining their facial biometric identifiers or biometric information;

c. Whether Defendant disseminates or otherwise discloses the biometric information of Non-User Class members without their consent;

d. Whether Defendant's conduct violates BIPA;

e. Whether Defendant's BIPA violations are willful or reckless;

f. Whether Defendant used the male Non-User Plaintiffs' and the other Non-User Class members' names, photographs, images, and likenesses to advertise or promote their paid service;

g. Whether Defendant used the male Non-User Plaintiffs' and the other Non-User Class members' identities for a commercial purpose;

h. Whether Defendant received consent to use the male Non-User Plaintiffs' and the other Non-User Class members' identities for a commercial purpose;

i. Whether Defendants' conduct violated IRPA; and

j. Whether the male Non-User Plaintiffs and the Non-User Class are entitled to damages and injunctive relief.

74. Absent a class action, most members of the Non-User Class would find the cost of litigating their claims to be prohibitively expensive and would thus have no effective remedy. The class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants and promotes consistency and efficiency of adjudication.

75. The male Non-User Plaintiffs will fairly and adequately represent and protect the

interests of the other members of the Non-User Class they seek to represent. The male Non-User Plaintiffs have retained counsel with substantial experience in prosecuting complex litigation and class actions. The male Non-User Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the other members of the Non-User Class and have the financial resources to do so. Neither the male Non-User Plaintiffs nor their counsel have any interest adverse to those of the other members of the Non-User Class.

76. Defendant has acted and failed to act on grounds generally applicable to the male Non-User Plaintiffs and the other members of the Non-User Class, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Non-User Class and making injunctive or corresponding declaratory relief appropriate for the Non-User Class as a whole.

**COUNT I**
**Violations of the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq*.**
**(On behalf of the female User Plaintiffs and the User Class)**

77. Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

78. Defendant is a private entity under BIPA.

79. BIPA requires a private entity, such as Defendant, to obtain informed written consent from individuals before acquiring their biometric information. Specifically, BIPA makes it unlawful to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or customer's biometric identifiers or biometric information unless [the entity] first: (1) informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject . . . in writing of the specific purpose and length of time for which a biometric identifier or biometric information is being captured, collected, stored, and used; and (3) receives a written release executed by the subject of the biometric identifier or biometric

information." 740 ILCS 14/15(b).

80. The female User Plaintiffs and the other User Class members have had their "biometric identifiers," namely scans of their facial geometry, collected, captured, or otherwise obtained by Defendant when they registered as users for Defendant's service. 740 ILCS 14/10.

81. Defendant's practice with respect to capturing, collecting, storing, possessing, disclosing and using biometrics fails to comply with applicable BIPA requirements:

a. Defendant failed to inform female User Plaintiffs and the members of the User Class in writing that their biometrics were being collected and stored, prior to such collection or storage, as required by 740 ILCS 14/15(b)(1);

b. Defendant failed to inform the female User Plaintiffs and the User Class in writing of the specific purpose for which their biometrics were being captured, collected, stored, and used, as required by 740 ILCS 14/15(b)(2);

c. Defendant failed to inform the female User Plaintiffs and the User Class in writing of the specific length of term their biometrics were being captured, collected, stored, and used, as required by 740 ILCS 14/15(b)(2);

d. Defendant failed to obtain a written release, as required by 740 ILCS 14/15(b)(3); and

e. Defendant failed to obtain informed consent to disclose or disseminate the User Class's biometrics, as required by 740 ILCS 14/15(d)(1).

82. BIPA provides statutory damages of $5,000 for each willful and/or reckless violation of BIPA and, alternatively, damages of $1,000 for each negligent violation of BIPA. 740 ILCS 14/20(1)-(2).

83. Defendant's violations of BIPA, a statute that has been in effect since 2008, were

knowing and willful, or were at least in reckless disregard of the statutory requirements. Alternatively, Defendant negligently failed to comply with BIPA.

84. Accordingly, with respect to Count I, the female User Plaintiffs, individually and on behalf of the proposed User Class, pray for the relief set forth below.

**COUNT II**
**Violations of the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq*.**
**(On behalf of the male Non-User Plaintiffs and the Non-User Class)**

85. Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

86. Defendant is a private entity under BIPA.

87. BIPA requires a private entity, such as Defendant, to obtain informed written consent from individuals before acquiring their biometric information. Specifically, BIPA makes it unlawful to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or customer's biometric identifiers or biometric information unless [the entity] first: (1) informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject . . . in writing of the specific purpose and length of time for which a biometric identifier or biometric information is being captured, collected, stored, and used; and (3) receives a written release executed by the subject of the biometric identifier or biometric information." 740 ILCS 14/15(b).

88. The male Non-User Plaintiffs and the other Non-User Class members have had their "biometric identifiers," namely scans of their facial geometry, collected, captured, or otherwise obtained by Defendant when the male Non-User Plaintiffs' and the other Non-User Class members' photos were posted on Defendant's Tea App.

89. Defendant's practice with respect to capturing, collecting, storing, and using biometrics fails to comply with applicable BIPA requirements:

a. Defendant failed to inform the male Non-User Plaintiffs and the members of the Non-User Class in writing that their biometrics were being collected and stored, prior to such collection or storage, as required by 740 ILCS 14/15(b)(1);

b. Defendant failed to inform the male Non-User Plaintiffs and the Non-User Class in writing of the specific purpose for which their biometrics were being captured, collected, stored, and used, as required by 740 ILCS 14/15(b)(2);

c. Defendant failed to inform the male Non-User Plaintiffs and the Non-User Class in writing of the specific length of term their biometrics were being captured, collected, stored, and used, as required by 740 ILCS 14/15(b)(2);

d. Defendant failed to obtain a written release, as required by 740 ILCS 14/15(b)(3); and

e. Defendant failed to obtain informed consent to disclose or disseminate the Non-User Class's biometrics, as required by 740 ILCS 14/15(d)(1).

90. BIPA provides statutory damages of $5,000 for each willful and/or reckless violation of BIPA and, alternatively, damages of $1,000 for each negligent violation of BIPA. 740 ILCS 14/20(1)-(2).

91. Defendant's violations of BIPA, a statute that has been in effect since 2008, were knowing and willful, or were at least in reckless disregard of the statutory requirements. Alternatively, Defendant negligently failed to comply with BIPA.

92. Accordingly, with respect to Count II, the male Non-User Plaintiffs, individually

and on behalf of the proposed Non-user Class, pray for the relief set forth below.

**COUNT III**
**Illinois Right of Publicity Act, 765 ILCS 1075/1, *et seq.***
**(On behalf of male Non-User Plaintiffs and the Non-User Class)**

93. Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

94. The Illinois Right of Publicity Act prohibits using a person's name, photograph, image, or likeness for the purpose of advertising or promoting products, merchandise, goods, or services without written consent. *See* 765 ILCS 1075/1, *et seq.*

95. By posting their profiles and photos as a means to entice its users to purchase Defendant's paid premium services on its Tea App., the male Non-User Plaintiffs and the other Non-User Class members have had their name, photograph, image or likeness used by Defendant for the purpose of promoting Defendant's paid premium service without their written consent.

96. IRPA provides for statutory damages of the greater of $1,000 or actual damages for violations, as well as punitive damages for willful violations. 765 ILCS 1075/40.

97. Defendant's use of the male Non-User Plaintiffs' and the other Non-user Class members' photos, profiles, and identities in connection with Defendant's paid premium service is an essential aspect of their business model and constitutes a willful violation of IRPA, which has been in effect since 1999.

98. Accordingly, with respect to Count III, the male Non-User Plaintiffs, individually and on behalf of the proposed Non-User Class, pray for the relief set forth below.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of the proposed Classes, respectfully request that this Court enter an Order:

a. Certifying the Classes as defined above, appointing Plaintiffs as class representatives and the undersigned as class counsel;

b. Declaring that Defendant's actions, as set forth herein, violate BIPA;

c. Awarding injunctive and equitable relief as necessary to protect the interests of Plaintiffs and the Classes by requiring Defendant to comply with BIPA;

d. Awarding statutory damages of $5,000 for each willful and/or reckless violation of BIPA, pursuant to 740 ILCS 14/20(2);

e. Awarding statutory damages of $1,000 for each negligent violation of the BIPA, pursuant to 740 ILCS 14/20(1);

f. Declaring that Defendant's actions, as set forth herein, violate IRPA;

g. Awarding injunctive and equitable relief as necessary to protect the interests of the male Non-User Plaintiffs and the Non-User Class by requiring Defendant to comply with the IRPA;

h. Awarding statutory damages of $1,000 for each violation of IRPA and punitive damages for each willful violation pursuant to 765 ILCS 1075/40.

i. Awarding reasonable attorneys' fees, costs, and other litigation expenses, pursuant to 740 ILCS 14/20(3) and 765 ILCS 1075/55;

j. Awarding pre- and post-judgment interest, as allowable by law; and

k. Awarding such further and other relief as the Court deems just and equitable.

**JURY DEMAND**

Plaintiffs request trial by jury of all claims that can be so tried.

DATED: August 18, 2026

Respectfully submitted,

SMONE HONEYCUTT, JERESA WHITE, SHANTEL SAGO, JASMINE VALDEZ, RODNEKA PERRY, ERIC DIAZ, MARK

SULLIVAN, and CRAIG HATFIELD, individually and on behalf of similarly situated individuals

By: /s/ *Jordan R. Frysinger*
One of Plaintiffs' Attorneys

Evan M. Meyers
Eugene Y. Turin
Jordan R. Frysinger
Ethan D. Coniglio
McGuire Law, P.C. (Firm ID 56618)
55 W. Wacker Drive, 9th Floor
Chicago, IL 60601
Tel: (312) 893-7002
emeyers@mcgpc.com
eturin@mcgpc.com
jfrysinger@mcgpc.com
econiglio@mcgpc.com

Jay Kumar
Jay Kumar Law (Attorney No. 60100)
211 W. Wacker Dr, Suite 200B
Chicago, IL 60606
Tel: (312) 767-7903
Jay@jaykumarlaw.com

Ryan F. Stephan
James B. Zouras
Catherine Mitchell Duffy
STEPHAN ZOURAS, LLC
222 W. Adams Street, Suite 2020
Chicago, Illinois 60606
312.233.1550
312.233.1560 *f*
rstephan@stephanzouras.com
jzouras@stephanzouras.com
cmitchell@stephanzouras.com

*Attorneys for Plaintiffs and the Putative Class*